No. 45,678

John Stanley Kimple, Ernest I. Stahly and Larry A. Morris, *Appellees*, v. Bill G. Foster, d/b/a The Roaring Sixties, *Appellant*.

(469 P. 2d. 281)

Opinion filed May 9, 1970.

*Robert J. O'Connor*, of Hershberger, Patterson, Jones & Thompson, of

Wichita, argued the cause, and *H. E. Jones,* of the same firm, was with him on the brief for the appellant.

*John C. Frank,* of Wichita, argued the cause, and *Eugene B. Ralston,* also of Wichita, was with him on the brief for the appellees.

The opinion of the court was delivered by

FONTRON, J.: This action was commenced by the three plaintiffs, John Stanley Kimple, Ernest I. Stahly and Larry A. Morris, to recover for personal injuries sustained while guests at The Roaring Sixties, a Wichita nightspot. The case was tried to a jury which awarded damages to each plaintiff in the sum of $6500. The defendant, Bill G. Foster, owner of the offending tavern, has appealed.

For the three victims, the evening of July 7, 1966, began innocently enough. The men met in the afternoon for a business conference, following which they had dinner together. About 9:00 p. m. they dropped into The Roaring Sixties, where they ordered a pitcher of beer. Soon thereafter the tavern exploded with a frenetic violence which more than matched the picturesque character of its name.

The record reflects that when the plaintiffs entered the tavern, a group of males was gathered around a table some distance away. These characters had been patronizing the tavern since afternoon, drinking beer, pyramiding empty beer cans on their table, harassing patrons, brawling and behaving generally in a fashion that may be termed, at best, as obnoxious.

Shortly after they had taken their seats the plaintiffs, none of whom were in anywise boisterous or unruly, were approached by one of the aforesaid male characters who bummed a light for his cigarette. After being accommodated he returned to his peer group across the room. In a matter of minutes several members of the graceless group surrounded the table at which the plaintiffs were seated, all seemingly itching for trouble. One of their number accused the plaintiffs of making uncomplimentary remarks about his girl friend (one of the go-go dancers who also served as waitresses) and invited them outside for a fight. When this gracious invitation was firmly declined, the gang began its vicious attack by kicking the chair out from under Mr. Kimple. The ultimate result of the ensuing affray was that all three plaintiffs were injured amidst an unrelenting rain of blows, kicks and missiles. Further details of the gory assault will be related when and as required.

The basis of the plaintiffs' claims against Mr. Foster, the pro-

prietor of The Roaring Sixties, was his failure to provide them with the protection to which they were entitled as his guests. There is actually little dispute between plaintiffs and defendant with respect to the general proposition that a tavern operator owes his patrons the duty to exercise reasonable care for their personal safety. In this jurisdiction the general rule has been phrased in *Huddleston v. Clark*, 186 Kan. 209, 349 P. 2d 888, in these words:

"While the owner and operator of a public tavern and grill is held to a stricter accountability for injuries to patrons than is the owner of private premises generally, the rule is that he is not an insurer of the patrons, but owes them only what, under the particular circumstances, is ordinary and reasonable care." (Syl. § 2.)

We find this rule to be in substantial accord with the prevailing doctrine which is expressed in 40 Am. Jur. 2d, Hotels, Motels, Etc., § 112, p. 987:

"A proprietor of an inn, hotel, restaurant, or similar establishment is liable for an assault upon a guest or patron by another guest, patron, or third person where he has reason to anticipate such assault, and fails to exercise reasonable care under the circumstances to prevent the assault or interfere with its execution. . . ."

To similar effect is *Reilly v. 180 Club, Inc.*, 14 N. J. Super. 420, 82 A 2d 210, wherein the court said:

"It is in the law the duty of a tavern-keeper to exercise reasonable care, vigilance, and prudence to protect his guests from injury from the disorderly acts of other guests. . . ." (p. 424.)

For similar expressions of this principles see *Parker v. Kirkwood*, 134 Kan. 749, 752, 8 P. 2d 340; *Holcomb v. Meeds*, 173 Kan. 321, 246 P. 2d 239; Restatement, Torts, § 348 (1934 Ed.); 43 C. J. S., Innkeepers, § 22, pp. 1173-1176; Anno., 70 A. L. R. 2d, Patron, Injury By Third Person, pp. 628, *et seq.*

Although, as we have said, the defendant does not seriously question this legal maxim, he calls our attention to its qualification in the following particular: That the proprietor's duty to protect his patrons does not arise under the rule until the impending danger becomes apparent to the tavern keeper, or the circumstances are such that an alert and prudent person would be placed on notice of the probability of danger. (*Stevenson v. City of Kansas City*, 187 Kan. 705, 360 P. 2d 1; *Cale v. Johnson*, 177 Kan. 576, 280 P. 2d 588; *Moore v. Yearwood*, 24 Ill. App. 2d 248, 164 N. E. 2d 215.)

Pursuing this theme, the defendant asserts that the record is

entirely bereft of evidence which would tend to place him on notice of impending danger. In making this assertion, we believe the defendant is mistaken. As we view this record, there is ample evidence to have alerted both the defendant himself and his go-go girl manager to the probability of violence erupting from the rowdy and unruly gang which had infested the tavern since afternoon.

We shall make no attempt to set out the evidence in detail. It is sufficient to say that "the guys" around the beer can pyramid, who ranged in number as high as eight or ten, were high and belligerent at 4:30 that afternoon and "maybe wanted to start a fight"; that about 5:15 or so the male manager (Mr. Foster) was in the tavern and set the boys up for a free beer; about 5:30 or 6:00 a fight broke out in which one of the fellows from the "pyramid" table hit and ran another guy out of the tavern; that the group was loud and boisterous and "would have gotten thrown out [of any other bar], because of the noise they were creating and the belligerence or sarcasm toward other people."

There is further evidence from a member of the gang that Foster's employees knew of this prior fight because they turned on the lights to stop it; and that there was another incident at the tavern over a hat involving some farm boys and one of the gang took the hat and everyone got to joking about it.

Mr. Foster himself testified that he was in the tavern from 5:00 to 6:00 that afternoon; that the boys were then building the pyramid of beer cans; and that he bought the boys a round of free beer.

We think the foregoing evidence was clearly sufficient, if believed by the jury, to warrant the jury in concluding that the defendant Foster, himself, had knowledge of facts which should reasonably have placed him on notice that trouble might well be expected from the unruly, belligerent group, and that an explosion might erupt which would endanger the safety of his patrons. True, Mr. Foster denied that any disturbance took place in the tavern while he was there, but there is evidence from which a contrary inference could well be drawn. Moreover, the defendant was aware of the gang's presence when he left his place of business and had helped to assuage its members' thirst by providing free beers all around.

Not only may notice be imparted to the defendant himself, but his go-go manager, whose duty it was to maintain order in the

absence of her employer, was on the scene as the storm clouds gathered, and she took no steps to forestall the approaching tempest. The evidence is to the effect that before the physical attack commenced, the plaintiffs and other patrons repeatedly told the girls to summon the police but to no effect. In fact, it may fairly be concluded from the evidence that the police were not called until the battle had raged for some ten minutes or so, during which time at least two of the go-go girls joined in the fray and belted the plaintiffs.

A case with similar overtones arose in our sister state of Minnesota (*Priewe v. Bartz*, 249 Minn. 488, 83 N. W. 2d 116, 70 A. L. R. 2d 621.) There, a barmaid was in charge of her employer's place of business when an inebriated customer challenged another intoxicated customer to a fight. The barmaid did no more than to tell both inebriates to step outside if they wanted to fight. The police were not called although there was ample time for doing so. In upholding a verdict against the tavern owner in favor of an innocent third party who sustained injuries as a result of the fight, the Minnesota court said:

". . . [T]here can be no doubt that Mogen, the operator of a 3.2 beer establishment, owed a duty to those coming upon his premises to exercise reasonable care to protect them from injury at the hands of other patrons. . . ." (p. 491.)

". . . The duty of the proprietor was not met by the admonition of the barmaid that the parties should go outside if they wanted to fight. . . . There must be some affirmative action to maintain order on the premises by demanding that such a person leave or by calling the authorities to enforce such demand. . . ." (pp. 492, 493.)

In *Peck v. Gerber*, 154 Or. 126, 59 P. 2d 675, 106 A. L. R. 996, the plaintiff was a guest in a restaurant at which alcoholic drinks were served. He was injured when two young men had an altercation, one of whom was knocked over and against him. The Oregon court upheld a verdict in the plaintiff's favor and in the course of its opinion stated:

"A guest or patron of such establishment has a right to rely on the belief that he is in an orderly house, and that the operator, personally or by his delegated representative, is exercising reasonable care to the end that the doings in the house shall be orderly . . ." (p. 136.)

In our opinion there is ample evidence to establish that both the defendant and his designated manager had notice of sufficient facts to have alerted them to the potentiality of danger to the guests of

The Roaring Sixties. A case in point is *Coca v. Arceo*, 71 N. M. 186, 376 P. 2d 970, wherein the court said:

". . . The rule [of notice] does not require a long and continued course of conduct to find that the proprietor had knowledge of the violent disposition of the other patron—all that is necessary is that there be a sequence of conduct sufficiently long to enable the proprietor to act for the patron's safety. It is not necessary that the proprietor know of a history of a series of offenses against the peace. . . ." (p. 190.)

The defendant complains of instructions given the jury to the effect that none of the plaintiffs were guilty of contributory negligence. Under the circumstances shown by the record we find no error in this respect. There is no evidence to indicate that plaintiffs were misbehaving or rowdy in any particular; the evidence, indeed, is quite to the contrary. They consistently sought to evade trouble until it was forced upon them.

Although the chief instigator of the attack accused one of the men of making a derogatory remark about his girl, this was rank hearsay on his part. Patrons sitting near the plaintiffs' table heard no remarks of an objectionable nature. The plaintiffs denied any disparaging utterances on their part, and the go-go girl herself, who may or may not have inflamed her boy friend's ire to fighting pitch, did not appear at the trial to favor the court with her version of the affair.

A number of alleged trial errors must be mentioned briefly. Objection was made to the admission of a picture, taken at the hospital, of the area over Kimple's eye. This area, together with the eyelid, had been gashed and cut when a glass or ashtray was hurled into his face. While somewhat grotesque, and not readily understandable, the picture was thoroughly explained by Mr. Kimple in his testimony. Under the rule set out in *State v. Turner*, 193 Kan. 189, 392 P. 2d 863, we discern no error in admitting the photograph.

Mr. Kimple, at the time of the fight, was wearing a steel plate in the front part of his skull, the aftermath of a former head injury resulting from an accident. Over the defendant's objection, Kimple testified to the fact and as to its possible consequences. We think no error resulted, if for no other reason than that Mr. Kimple also testified the plate was now loose.

Exception is taken to the court's instruction as to damages. The objection is focused on references to future pain and suffering and future disability, the basis of the objection being there was no evidence of future disability, pain or suffering. In all candor it must

be acknowledged that as to Stahly and Morris there was no testimony going to the effects which might be expected from the beatings in the future, even though both men sustained severe injuries incapacitating them for considerable periods of time. In the case of Kimple, there was evidence, as already pointed out, from which it might be inferred that the plate in his skull was loosened in the affray, thus affording some basis for future disability as to him.

It must be said that the trial court did qualify its references as to future effects with the limiting expressions "any" and "if any." Moreover, the jury did not separate the amounts awarded into individual items and it is impossible to determine whether any allowance whatever was made for future pain, suffering and disability. Accordingly, we cannot say that prejudice resulted from the instruction on damages, even though the trial court might well have observed the admonition found in PIK 9.01, at page 255, that where evidence of future damage is lacking, all reference thereto should be deleted from the instructions.

Prejudicial error has not been made to appear and the judgments are affirmed as to each plaintiff.