(951 P.2d 1308)
No. 77,431

JOHN WEROHA, *Appellant*, v. REGE CRAFT, d/b/a PLANET
PINBALL, and JIM DERRY, *Appellees*.

Opinion filed January 16, 1998.

*John M. Solbach*, of Lawrence, and *Jeffrey B. Stephens*, of Lawrence, for the appellant.

*Todd N. Thompson*, of Law Offices of Todd N. Thompson, of Lawrence, for the appellees.

Before PIERRON, P.J., GREEN, J., and GENE B. PENLAND, District Judge Retired, assigned.

PIERRON, J.: John Weroha appeals the district court's grant of summary judgment in favor of Rege Craft, d/b/a Planet Pinball, and Jim Derry.

Weroha filed a petition against Planet Pinball and other unknown owners, shareholders, or partners; Jim Derry; and four unknown individuals who were in the Planet Pinball on or about December 29, 1992. The petition alleged Weroha entered Planet Pinball, walked directly to the restroom, and was attacked by unknown assailants. He suffered injuries directly resulting from the attack. In his petition, Weroha alleged that Planet Pinball negligently or recklessly breached its duty of care owed to him by failing to provide reasonable security measures or a safe place to engage in the activities offered at Planet Pinball.

Planet Pinball filed a motion for summary judgment, claiming that Weroha failed to establish that Planet Pinball owed Weroha a duty to protect him against third-party attackers.

The district court's initial memorandum decision made the following findings of fact and conclusions of law:

## "Findings of Fact

"During the evening hours of December 29, 1992, Plaintiff entered the business known as Planet Pinball and went directly to the bathroom. Either at the time the plaintiff entered the bathroom or shortly thereafter the plaintiff was attacked by a group of individuals who were not known to plaintiff prior to the attack. His jaw was broken, he was knocked unconscious, and suffered other injuries to his face and head. Plaintiff's wallet was missing after the attack and he assumes it was taken by his assailants. Other than robbery, Plaintiff knows of no reason for the attack.

"Defendant Craft owns Planet Pinball and defendant Derry was the sole employee on duty at the time of Plaintiff's battery. At the time that the battery occurred, Mr. Derry was in a storeroom talking on the phone and was out of view of the portion of the business which was accessible to the public. There was no sign of forcible entry into the bathroom.

"There was only one employee on duty in Planet Pinball on the evening of the attack on Plaintiff. There was no security guard on duty and neither convex mirrors allowing visual access to blind parts of the public areas nor remote cameras, either real or fake, had been installed. There had been no prior incidents of violence either in Planet Pinball or in the surrounding shopping center. On the night of the attack, none of the customers were drinking alcohol or behaving rowdily. Defendants have hired off-duty police officers on occasion; although, none were present on the night of Plaintiff's attack.

"Plaintiff had patronized Planet Pinball on one hundred fifty to one hundred seventy-five prior occasions. He had not previously observed any fights or violence there.

"Plaintiff attached to his response to the motion for summary judgment the affidavit of Leon Tuschoff, a security expert. Among other things, Mr. Tuschoff states that it is his opinion that the security at Planet Pinball 'falls below normal standards of care and below the acceptable standards of security for the type of game arcade business that Planet Pinball is, and was at the time of the incident. . . .' His affidavit goes on to offer examples of the security procedures which Mr. Tuschoff believes should have been implemented by defendants.

## "Conclusions of Law

. . . .

"[T]he first issue to be discussed is whether the defendants had a duty to take measures to protect plaintiff from criminal conduct. Under the rule set forth by the court in [*Seibert v. Vic Regnier Builders, Inc.*, 253 Kan. 540, 856 P.2d 1332 (1993),] the court must look at the totality of the circumstances facing the defendants when they made their decision concerning the security measures which were necessary. There is no evidence that the business had experienced any problems with violence or crime. There is no evidence that neighboring businesses had experienced problems with violence or crime. Although the plaintiff's expert alludes to the fact that businesses of the type run by defendants experience a high

crime rate, there is no evidence that this is in fact the case and, more importantly, there is no evidence the defendants had knowledge that this is the case. Thus, the fact that defendants failed to provide mirrors, cameras and security officers on the premises cannot be grounds for negligence in this case. As to these issues defendants' motion is sustained.

"There is one allegation made by plaintiff which can withstand the motion for summary judgment. That allegation is that the defendants owed a duty to plaintiff to properly supervise the area in which patrons are present. Even without evidence of high crime, it seems apparent to the court that a reasonable person operating a business patronized by a large group of adolescents would take some steps to assure that the adolescents were supervised at all times. *It is common knowledge that the presence of unsupervised adolescents in a group can lead to crime or violence.* Whether or not the defendants breached this duty is a question for the trier of fact. As to this issue, the defendants' motion is denied." (Emphasis added.)

In the district court's second memorandum decision, in which it granted Planet Pinball's motion to reconsider, it implicitly recognized that it was improper to take judicial notice of the fact that unsupervised adolescents in a group can lead to crime or violence. By eliminating judicial notice of this fact, the court found Weroha had failed to present any evidence, under the totality of the circumstances, which would have caused Planet Pinball to reasonably foresee the third-party attack. Therefore, the court found that viewing the facts in a light most favorable to Weroha, he had failed to establish that Planet Pinball owed a duty to provide security to him.

Weroha filed a motion to reconsider the district court's second memorandum decision. The court denied the motion and restated its previous findings in its third and final memorandum decision.

On appeal, neither party contests the district court's findings of facts. However, Weroha contests the inferences drawn by the court, the decision to withdraw judicial notice, and the application of the law in this case.

Weroha does not argue he is entitled to any relief solely because the district court reversed itself in applying judicial notice to the fact that the presence of unsupervised adolescents in a group can lead to crime or violence. Rather, Weroha argues he did not have notice the court had reversed itself until the hearing on his motion to reconsider, when the court expressly said it had taken this action.

In the court's second memorandum decision ruling on Planet Pinball's motion to partially reconsider, the court reversed its ruling and impliedly withdrew the judicially noticed fact; however, it was not expressly withdrawn until the later hearing.

Weroha argues that because he did not have notice that this judicially noticed fact had been withdrawn, he did not make an effort to file Marvin Jefferson's affidavit with the court. According to Weroha, Jefferson's affidavit is evidence of the previously judicially noticed fact. Therefore, he asserts Jefferson's affidavit should have been considered in reviewing whether his cause of action alleged sufficient facts to submit the case to the jury.

The district court's final memorandum decision on Weroha's motion to reconsider stated:

"In addition to the legal arguments made by counsel, counsel for plaintiff has submitted an affidavit by Marvin Jefferson, a witness to the incident . . . . The court does not make a determination as to whether it is appropriate for the court to consider these items, submitted after the expiration of the time set out in Rule 141, as the court finds that even if the court considers them, they do not affect the decision of the court."

Jefferson's affidavit alleged the names of two men he claimed were Weroha's assailants. The affidavit stated that given the character of the assailants and their friends, Derry's activities would have apprised the assailants of the lack of security at Planet Pinball and, in fact, would have encouraged the assault. However, Jefferson's affidavit did not allege that any crime or violent activity had occurred in or around Planet Pinball prior to that event; nor did he state an opinion or draw a conclusion that the presence of *unsupervised adolescents in a group* can lead to crime or violence. Jefferson merely asserted that these two men, ages 17 and 19, have a tendency to engage in crime or violence when left unsupervised.

Weroha's argument that he was substantially prejudiced by the district court's withdrawal of the judicially noticed fact because it prevented him from timely filing supporting evidence via Jefferson's affidavit is without merit. The record clearly shows the court did consider the affidavit, even though it was not timely filed, and it did not provide alternative evidence of the previously judicially

noticed fact which makes a direct correlation between groups of adolescents and criminal or violent activity.

Finally, Weroha's argument of prejudice must fail because the district court took judicial notice of the fact in question on its own motion. If the court had not taken judicial notice of this fact at the time the initial memorandum decision was ordered, it would have granted Planet Pinball summary judgment on all issues. Weroha needed to file Jefferson's affidavit with the court prior to its initial ruling on summary judgment.

The next issue to be considered is whether the district court erred in finding that Weroha failed to establish that Planet Pinball had a duty to protect Weroha from third-party attacks.

"A party is entitled to summary judgment if 'there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law.' K.S.A. 60-256(c)

. . . .

"On appeal, we are required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom summary judgment was entered. *McGee v. Chalfant*, 248 Kan. 434, 437, 806 P.2d 980 (1991). Where reasonable minds could differ as to the conclusions to be drawn from the evidence, summary judgment should be denied. However, in *McGee*, we also noted: 'The existence of a legal duty is a question of law to be determined by the court.' 248 Kan. at 437. We have unlimited review of questions of law. *T.S.I. Holdings, Inc. v. Jenkins*, 260 Kan. 703, 716, 924 P.2d 1239 (1996)." *Gragg v. Wichita State Univ.*, 261 Kan. 1037, 1044, 934 P.2d 121 (1997).

The memorandum decision denying Weroha's motion for reconsideration stated:

"As the court noted in its memorandum decision on the defendants' motion for reconsideration, the Supreme Court in *Seibert v. Vic Regnier Builders, Inc.*, 253 Kan. 540 [, 550, 856 P.2d 1332] (1993), set forth the following rule to be applied to cases in which invitees are victims of crimes on business premises:

'If, under the totality of the circumstances, the defendants could reasonably foresee that their customers have a risk of peril above and beyond the ordinary, they must take those security measures which would be taken by a reasonable person under the totality of the circumstances.'

In deciding a motion for summary judgment the court must determine whether there is a legal duty owing by the defendants to the plaintiff. The court must determine whether 'under the totality of the circumstances, the defendants could reasonably foresee that their customers have a risk of peril above and beyond the

ordinary.' This issue was analyzed in detail in the court's original decision. The actions of the defendants on the night in question are irrelevant to this issue.

"The only real evidence which bears on this issue is the affidavit of the plaintiff's expert. After again reviewing the affidavit the court believes that the affidavit is insufficient to show that the defendants could reasonably have foreseen that their customers have a risk of criminal activity above and beyond the ordinary. The affidavit is conclusory and does not state that it is well known to owners of arcades that customers have an extraordinary risk of criminal activity. The affidavit also does not contain information sufficient to allow the court to determine that the affiant is an expert who is capable of making such a statement."

Both Weroha and Planet Pinball agree that *Seibert* sets forth the test for the district court to apply in determining whether a duty existed to provide security.

In *Seibert v. Vic Regnier Builders, Inc.*, 253 Kan. 540, 856 P. 2d 1332 (1993), plaintiff drove to shopping center and parked in an underground parking garage. Upon exiting the car, plaintiff was assaulted and shot by the assailants. Plaintiff brought an action against the owner of the shopping center, alleging:

"[The shopping center] was negligent in not providing security for its patrons when the assault upon her was foreseeable. Specifically, she alleged that by virtue of past criminal activity in the shopping center's parking areas plus the nature of the underground parking area, including dim lighting by virtue of numerous burned-out fluorescent tubes, [the shopping center] owed a duty to her as a business invitee to provide security. The shopping center had no security for its patrons—no warning signs, video surveillance, or security guards. The plaintiff offered expert testimony that the security, including the lighting, was inadequate and had appropriate security measures been in place, the attack upon her would probably not have occurred." 253 Kan. at 542.

In determining whether the shopping center had a duty to provide security, the Kansas Supreme Court noted this was not a case of either failure to intervene or summon police:

"Rather, the liability sought to be imposed . . . is predicated upon the frequency and severity of prior attacks against different patrons by presumably different attackers at different times and in different areas of the parking lot, plus the totality of the circumstances making the attack upon the plaintiff or some other business invitee foreseeable to the defendant, who then had a duty to take appropriate security action to prevent or make less likely the same from occurring." 253 Kan. at 547.

The *Seibert* court looked to two general rules to determine whether a duty was owed:

"The owner of a business is not the insurer of the safety of its patrons or customers. The owner ordinarily has no liability for injuries inflicted upon patrons or customers by the criminal acts of third parties in the business' parking lot, as the owner has no duty to provide security. Such a duty may arise, however, where circumstances exist from which the owner could reasonably foresee that its customers have a risk of peril above and beyond the ordinary and that appropriate security measures should be taken." 253 Kan. at 548.

Circumstances which the *Seibert* court found to create a duty are prior incidents in the area and whether it is located in a high crime area. 253 Kan. at 549.

Finally, the *Seibert* court found plaintiff's general allegations that security was inadequate were not sufficient to allege a duty existed; rather, plaintiff must show that under the totality of the circumstances the owner had a duty to provide security. 253 Kan. at 550. The plaintiff presented evidence that in the past 3 years, two armed robberies had occurred and one car was broken into.

The *Seibert* court reversed and remanded to the district court with instructions to review the case under a totality of circumstances test. The Supreme Court further directed the district court to make specific findings as to whether the premises were in a high crime area and to consider the physical characteristics of the parking garage to determine whether under the totality of the circumstances the shopping center owed a duty to provide security. 253 Kan. at 550.

Weroha argues the district court here made the same error as did the district court in *Seibert*, which was to simply rely on the "prior similar incidents" rule. 253 Kan. at 543. Weroha contends the court failed to apply the totality of circumstances rule articulated in *Seibert* and failed to draw all reasonable inferences in favor of the nonmoving party on summary judgment.

In reviewing the totality of the circumstances, the district court looked at the following facts: The only employee on duty was not in the public area of the establishment for an extended period of time; two nights a week Planet Pinball hired off-duty police officers to work; Planet Pinball did not hire a security expert to inquire

about security measures which could have been taken; some inexpensive, unobtrusive security measures could have been taken which would have greatly increased the security on the premises; Planet Pinball did not have a policy of ejecting customers who were loitering and not playing games; there has never been a prior incident of violence at Planet Pinball; there was no evidence of a high rate of criminal activity in the area where Planet Pinball was located; and there was no evidence that arcade businesses in general have a high degree of criminal activity associated with them.

Weroha asserts the district court erred in finding there was no evidence that any incidents of violence had occurred at Planet Pinball and there was no evidence that arcade businesses in general have a high degree of criminal activity.

Weroha asks this court to draw the inference that there were previous incidents of violence at Planet Pinball from Planet Pinball's decision to hire off-duty police officers on Friday and Saturday nights. In support of his request, Weroha points to a statement by his expert, Leon Tuschoff:

"The Affiant further states that in his opinion it is incongruent for the owner of the store to claim that there was no reason to hire off-duty police officers (which is the most expensive type of security and in most incidences twice as expensive as the private security that was available in Lawrence at the time) other than . . . incidents or other indications that such security was needed."

Weroha further asks us to draw the inference that the arcade business in general has a high degree of criminal activity. In support, Weroha relies upon Tuschoff's conclusion:

"The Affiant further states that the apparent lack of attention to security, outlined above, in this type of business is inconsistent with the minimum level of safety/security such business should provide for its patrons' safety, given the ages of the patrons and the general nature of the business."

The inference which Weroha asks this court to draw from the fact that Planet Pinball hired off-duty police officers two nights a week is not a reasonable inference. See *McGee v. Chalfant*, 248 Kan. 434, 437, 806 P.2d 980 (1991). Weroha's inference is based solely on the costs associated with hiring off-duty police officers. Without more, it is not reasonable to conclude that previous inci-

dents of violence had occurred at Planet Pinball from its decision to hire off-duty police officers on Friday and Saturday nights.

Weroha's reliance upon Tuschoff's bald statement about the "minimum level of safety/security such business should provide for its patrons' safety, given the ages of the patrons and the general nature of the business," to support the inference that arcade businesses in general have a high degree of criminal activity is unwarranted.

The district court viewed the evidence in the light most favorable to Weroha, but refused to make unreasonable inferences. See *McGee*, 248 Kan. at 437. The district court did not err in finding that based upon the totality of the circumstances, which included no evidence of previous violent activity at Planet Pinball, in the area, in the arcade business, or with the alleged assailants at Planet Pinball, Planet Pinball did not have a general duty to provide additional security to its patrons. An opinion to the contrary must have some factual basis to be credible.

We finally address whether the court erred in finding that Planet Pinball did not have a duty to intervene.

In granting summary judgment in favor of Planet Pinball, the district court stated:

"Supreme Court Rule 141 provides that a party opposing a motion for summary judgment must state which factual contentions submitted by the moving party are controverted and must furnish a summary of the conflicting evidence with specific references to the pages, lines and/or paragraphs of the supporting documents. The plaintiffs have made no contraventions of the facts stated by the defendants or references to supporting documents which set forth any evidence which would impose on the defendants a duty to intervene. The defendants' motion for a summary judgment is granted as to any allegations that defendants breached a duty to intervene on behalf of plaintiffs."

On appeal, Weroha fails to argue that the district court erred in finding he had not made any factual contraventions to Planet Pinball's factual contentions on this issue. Further, Weroha confuses two separate legal duties in his argument that the district court erred in failing to find that Planet Pinball had a duty to intervene on his behalf.

*Kimple v. Foster*, 205 Kan. 415, 469 P.2d 281 (1970), sets forth the law in Kansas on a proprietor's duty to intervene. See *Seibert*, 253 Kan. at 547. In *Kimple*, the business owner was held liable when a physical attack commenced and several patrons, including plaintiffs, repeatedly asked employees to call the police, but to no avail. The business owner was found to have breached his duty to the plaintiffs because there was ample evidence that the employees had notice of the potentiality of danger to their guests. 205 Kan. at 419. The duty to intervene arises when a proprietor has actual notice, or should have notice, of the potentiality of danger.

There are no facts in this case which suggest that Derry had notice that Weroha was in either actual or potential danger; therefore, no duty to intervene occurred. In fact, Weroha states in his brief: "Upon hearing the [attack] through the wall, Defendant Derry left the store-room, where he had been on the phone again. He accosted the four individuals and asked them to leave. They did so." The evidence supports the fact that once Derry had notice of danger, he intervened.

Weroha is actually just arguing again that Planet Pinball had a duty to take additional security measures to prevent or make less likely the commission of the crime. As set out above, the necessary facts to establish that duty are not present in this case.

Affirmed.