IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 118,698

JEFFREY ALAN HAMMOND,
*Appellant*,

v.

SAN LO LEYTE VFW POST #7515,
*Appellee.*

SYLLABUS BY THE COURT

1.

One who holds his land open to the public for business purposes may be liable to visitors for physical harm caused by the acts of others. His failure to exercise reasonable care to discover such harmful acts, or give adequate warning to avoid or otherwise protect against them, is a breach of that businessperson's duty to the public on such land.

2.

For one holding his land open to the public for business purposes to be liable for a visitor's injuries caused by others, it is enough that the duty arises and the breach occurs on such land, even if the actual resulting physical harm takes place entirely outside the boundaries of the land.

Review of the judgment of the Court of Appeals in an unpublished opinion filed September 28, 2018. Appeal from Cloud District Court; KIM W. CUDNEY, judge. Opinion filed July 2, 2020. Judgment of the Court of Appeals reversing the district court is affirmed. Judgment of the district court is reversed, and the case is remanded with directions.

*Larry G. Michel*, of Kennedy, Berkley, Yarnevich & Williamson, Chartered, of Salina, and *Klint A. Spiller*, of the same firm, were on the brief for appellant.

1

*Michelle R. Stewart*, of Hinkle Law Firm LLC, of Overland Park, and *Jennifer R. Johnson*, of the same firm, were on the brief for appellee.

The opinion of the court was delivered by

WILSON, J.:  This personal injury case arises from a bar fight at the San Lo Leyte VFW Post #7515 in Clyde, Kansas, (VFW) between Jeffrey Hammond, plaintiff, and a third party patron of the bar, Travis Blackwood. On appeal, a panel of the Court of Appeals reversed the district court's summary judgment in favor of the VFW. In turn, the VFW petitioned this court for review, arguing it owed Hammond no duty at the time he sustained his injuries. For the reasons set forth below, we find that summary judgment was not warranted, affirm the decision of the Court of Appeals, and remand the case to district court for further proceedings.

FACTS

Given the nature of summary judgment, the facts established in this case are limited. The Court of Appeals panel compiled the following combined uncontroverted facts submitted by both parties in their respective motion for summary judgment and response. The panel's recitation of facts was accepted by both parties upon petition for review.

"1.   At approximately 10 p.m. on February 20, 2016, plaintiff Jeffrey Alan Hammond, a resident of Lee's Summit, Missouri, visiting Clyde, Kansas, went with his wife to the Clyde VFW.

"2.   While at the VFW, Hammond went to the restrooms located in the rear of the club, where he encountered Travis Blackwood.

2

"3. Hammond and Blackwood had a verbal argument in the bathroom, and according to Hammond, Blackwood wanted to beat him up in the bathroom but Hammond left the bathroom so that anything that occurred would be in public view. Hammond does not concede that he 'in any way caused or was a willing participant' in the argument.

"4. Neither Blackwood nor any of his friends laid hands on Hammond inside the VFW.

"5. After he left the bathroom, Hammond returned to his table at the club to finish his beer.

"6. After he finished his beer, Hammond walked up to the bar and ordered another beer.

"7. While he was at the bar, the VFW club manager, James Nease, approached Hammond from the back of the bar where Nease had been standing with Blackwood.

"8. When Nease reached Hammond, Nease told Hammond to leave the bar.

"9. Nease told Hammond he was barred from the Clyde club for life. Hammond responded, 'What are you talking about? I've only been here less than 20 minutes.' Nease responded that Hammond had been arguing with customers. At this point, Hammond said, 'This is bullshit. . . . This is B.S.' Blackwood and his companions crowded behind Nease and began to help the manager escort Hammond outside.

"10. Before Nease approached Hammond to banish him from the club, Hammond observed Blackwood and his companions communicate with Nease. Blackwood and his companions followed Nease as Nease approached Hammond. Shari Hammond overheard one of them say, '"Your husband's about to get kicked out of here."' Blackwood and his companions crowded around behind Nease as Nease announced Hammond's banishment from the VFW. Blackwood and his companions celebrated Nease's announcement of Hammond's banishment, as Hammond heard one of them say, '"Yeah, he's out of here. He's out of here."' Hammond agreed to leave, and Nease pushed him out the door of the club. Blackwood and his companions also

moved toward the door. They moved closely behind Nease and helped escort Hammond outside the VFW.

"11. Once outside of the bathroom, and until Nease and Blackwood and his companions escorted Hammond out of the club, Blackwood made no attempt to hit Hammond while Hammond was in the VFW.

"12. According to Hammond, Hammond, Nease, Hammond's wife, Blackwood, and several of Blackwood's friends exited the club.

"13. According to Hammond, Blackwood and his friends surrounded him and said something like, '"You're a mouthy son of a bitch."'

"14. Hammond testified that his wife, Shari Hammond, then came out and pushed Blackwood back and said, '"You two need to f'n grow up."'

"15. Shari Hammond testified that while the manager, Nease, was still outside, she saw Blackwood push her husband against the wall. In response, she pushed Blackwood and then someone pulled her off. According to Shari Hammond, they all got pulled apart and separated. At that point, Shari followed the manager inside because 'it seemed like it had calmed down.'

"16. According to Hammond's testimony, Shari Hammond and Nease then went back inside the VFW.

"17. Shari Hammond did not see anyone strike her husband.

"18. After Hammond's wife and Nease went back inside the VFW, and while on the sidewalk in front of the VFW, Hammond testified Blackwood head-butted him, pushing him against the wall so that his head hit the wall.

"19. Hammond made his way to his truck parked in the street in front of the VFW, and Blackwood and his friend started kicking him.

4

"20. After kicking Hammond in the street, Blackwood and his friend went back inside the VFW.

"21. When Hammond's wife went back inside the VFW, she started talking with some of the girls who had gone outside with the group and about 5 to 10 minutes later, '"one of the guys comes up to [her] and says 'Your husband's laying [*sic*] in the middle of the street."'"

"22. Hammond's wife went outside and investigated, saw her husband was bloody, and then called 911.

"23. Prior to February 20, 2016, Blackwood had only been involved in one physical altercation at the VFW which occurred in 2013. Blackwood instigated that fight. That assault occurred on January 31, 2013 after Bradley Czapanskiy arm wrestled Travis Blackwood's brother, Cody Blackwood. During their arm wrestling match, Czapanskiy's and Cody Blackwood's arms ended up falling off the edge of the table causing them both to stand up. At that point, Czapanskiy's mother, Deborah Czapanskiy, witnessed Travis Blackwood run across the room and '"blindside"' Bradley Czapanskiy with a punch, dropping Czapanskiy to the floor. After Bradley Czapanskiy was on the floor, Travis Blackwood and his two brothers proceeded to kick Czapanskiy, who was lying on the ground curled up in a ball. At no point did the staff of the VFW attempt to help the Czapanskiys during the assault, according to the Czapanskiys.

"24. Blackwood was banned from the VFW for a period of 90 days following the incident in 2013. James Nease was generally aware of the incident involving Blackwood in 2013 but had never observed Blackwood behave in a physically aggressive manner in the VFW since Nease began working there in late 2014." *Hammond v. San Lo Leyte VFW Post #7515*, No. 118,698, 2018 WL 4655891, at *1-3 (Kan. App. 2018) (unpublished opinion).

5

The VFW argues that summary judgment was proper because any duty it might have owed Hammond ended as soon as Hammond left the VFW-owned premises and it is undisputed by both parties that the injury took place on the public sidewalk just outside the VFW building.

On the other hand, Hammond argues that despite the injury occurring off VFW-owned premises, the VFW's duty to protect Hammond from the assault—and the subsequent breach of that duty—arose while Hammond and Blackwood were both still inside the bar. This argument was accepted by the Court of Appeals panel when it reversed summary judgment, finding that negligence could have arisen when all parties were on the VFW's premises.

*Standard of Review*

In an appeal from the district court's ruling on a summary judgment motion, the appellate court considers the motion de novo. *Martin v. Naik*, 297 Kan. 241, 246, 300 P.3d 625 (2013). This court applies all the same standards of the district court:

> """Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and *where we find reasonable*

*minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied." [Citations omitted.]'" Warner v. Stover*, 283 Kan. 453, 455-56, 153 P.3d 1245 (2007).

See *Osterhaus v. Toth*, 291 Kan. 759, 768, 249 P.3d 888 (2011).

For purposes of this appeal, we resolve all facts and inferences which may reasonably be drawn from the evidence in Hammond's favor. We also recognize that summary judgment should be granted with caution in negligence cases. *Apodaca v. Willmore*, 306 Kan. 103, 106, 392 P.3d 529 (2017); *Fettke v. City of Wichita*, 264 Kan. 629, 632, 957 P.2d 409 (1998). Ultimately, whether a duty exists is a question of law over which this court's review is unlimited. *Sall v. T's, Inc.*, 281 Kan. 1355, 1360, 136 P.3d 471 (2006). Whether a duty has been breached is a question of fact. *South v. McCarter*, 280 Kan. 85, 94, 119 P.3d 1 (2005).

*Discussion*

The Restatement (Second) of Torts § 344 (1965), defines the scope of liability of owner/operators of commercial enterprise:

"A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to:

(a) discover that such acts are being done or are likely to be done, or

(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it."

7

Kansas caselaw is consistent with this general rule. *Gould v. Taco Bell*, 239 Kan. 564, 567-68, 722 P.3d 511 (1986). In *Kimple v. Foster*, 205 Kan. 415, Syl. ¶ 2, 469 P.2d 281 (1970), we held: "A proprietor of an inn, tavern, restaurant or like business is liable for an assault upon a guest or patron by another guest or third party where the proprietor has reason to anticipate such an assault and fails to exercise reasonable care to forestall or prevent the same." Further, "[t]he duty of a proprietor of a tavern or inn to protect his patrons from injury does not arise until the impending danger becomes apparent to him, or the circumstances are such that a careful and prudent person would be put on notice of the potential danger." 205 Kan. 415, Syl. ¶ 3.

In *Gould*, which lays the analytical framework for this issue, the plaintiff and her friend went to a Taco Bell for a late-night meal. Shortly after sitting down, they were accosted by the only other group in the restaurant. After a brief verbal exchange, a member of the group began to strike Gould. Gould and her friend were left to fend for themselves while shouting to the assistant manager to call the police. The assistant manager decided not to call the police because he did not think the situation warranted it, although he also decided not to step in because he was afraid he would also be struck. Eventually, Gould's companion was able to force her way behind the counter to call the police herself, thus scaring away the aggressors. Despite the assault lasting only a series of minutes, there was some evidence the aggressor had been involved in a similar attack at this Taco Bell two weeks prior and that Taco Bell management had considered hiring security personnel due to a history of "rowdyism" on the premises. The case was allowed to go to jury, where Taco Bell was found 51% at fault. *Gould*, 239 Kan. at 565-69.

This court found the jury's verdict was supported by the evidence. "'It is not required that notice to the proprietor of such an establishment be long and continued in order that he be subject to liability; it is enough that there be a sequence of conduct sufficient to enable him to act on behalf of his patron's safety.'" *Gould*, 239 Kan. at 569 (quoting *Kimple*, 205 Kan. 415, Syl. ¶ 4).

8

*Gould* and its predecessor *Kimple* both involve altercations that happened on the premises of the commercial establishment directly in front of the proprietors. But negligence is not limited to these (sometimes literally) in-your-face circumstances and can still be found where the premises owner and employees were not even aware of the plaintiff, the attackers, or that there was an attack happening at all. The only requirements are simple:

> "Negligence exists where there is a duty owed by one person to another and a breach of that duty occurs. Further, if recovery is to be had for such negligence, the injured party must show: (1) a causal connection between the duty breached and the injury received; and (2) he or she was damaged by the negligence." *Seibert v. Vic Regnier Builders, Inc.*, 253 Kan. 540, 547, 856 P.2d 1332 (1993).

In *Seibert*, the facts were simple and straightforward. The plaintiff was assaulted in a shopping center's parking garage moments after parking her car and getting out. There was no warning or initial confrontation. The plaintiff argued that the owner of the shopping center should be liable on the basis of negligence for not providing security for the area. In determining whether a duty was owed in that case, this court acknowledged the general rules that: (1) the owner of a business is not the insurer of the safety of its patrons; and (2) the owner ordinarily has no liability for injuries inflicted upon patrons or customers by the criminal acts of a third party. However, this court further found that such a duty can arise when circumstances exist from which the owner could reasonably foresee that its customers have a risk of peril above and beyond the ordinary and that appropriate security measures should be taken. 253 Kan. at 548.

The *Seibert* court also determined that a totality of the circumstances approach is the best basis for establishing foreseeability. While prior incidents of attack may be a significant factor, other factors such as location, lighting, and security might also be considered. "The circumstances to be considered must, however, have a direct

9

relationship to the harm incurred in regard to foreseeability." 253 Kan. at 549. "'Whether risk of harm is reasonably foreseeable is a question to be determined by the trier of fact. Only when reasonable persons could arrive at but one conclusion may the court determine the question as a matter of law.'" *Nero v. Kansas State University*, 253 Kan. 567, 583, 861 P.2d 768 (1993) (quoting *Kansas State Bank & Tr. Co. v. Specialized Transportation Services, Inc.*, 249 Kan. 348, 362, 819 P.2d 587 [1991]).

In granting summary judgment, the district court cut off analysis of this case too soon. There are still questions that need to be answered by the trier of fact. As the Court of Appeals panel noted:

> "While the tortious conduct is *consummated* when the foreseeable conduct results in actual harm to the plaintiff, in the circumstances of our present case negligence can arise—based on the existence of a duty and the breach of that duty—while all the parties were *still on the VFW's premises*. It was there that Nease arguably could have foreseen the consequences of allowing Blackwood and his friends to join him in escorting Hammond from the premises. Under this scenario, if established at trial, any breach of Nease's duty would have occurred before Nease stepped over the threshold of the tavern door." (Emphases added.) *Hammond*, 2018 WL 4655891, at *8.

In its petition for review, the VFW argued that the panel's holding creates a "new duty . . . departing from long established Kansas law" that will "subject [restaurant, club, and bar owners] to an ambiguous, undefined standard of care arguably impossible to practically deal with in the operation of their businesses[,]" because it "extends" the existing duty to cover the public sidewalk. We disagree, for the same reasons as the panel.

We reiterate that on appeal, we need only determine if a duty existed. Here, both precedent and the Restatement inform us that the VFW owed Hammond a duty to protect him from the harmful acts of Blackwood as soon as it reasonably became aware of the

10

risk of harm. After that, there remain at least two questions of fact that render summary judgment improper.

First, was Hammond's injury foreseeable to the VFW? Based on the uncontroverted facts interpreted in the light most favorable to Hammond, a reasonable person might conclude that this harm was foreseeable. Blackwood clearly had contact with Nease and said something that prompted Nease to kick Hammond out without explanation. Nease was present for the hometown crowd cheering and jeering as Hammond was kicked out. Nease was even present to see Blackwood shove Hammond against the wall of the VFW once Hammond had been ejected.

The second question of fact is whether a breach of the duty occurred. In this instance, a breach could have occurred if the finder of fact determines that the VFW, through Nease, did not take reasonable care either to warn against or otherwise prevent the harm done to Hammond. For the VFW to be liable for Hammond's foreseeable injuries, it is enough that the duty arises and the breach occurs on its property, even if the actual resulting physical harm takes place entirely outside the boundaries of its land.

Beyond the existence of a duty and a breach of that duty, recovery for negligence also requires the injured party to show a causal connection between the duty breached and the injury received. Hammond has the burden at trial to prove all these issues of fact if he is to prevail, but he must be allowed the chance to do so. Summary judgment was not appropriate. Because there are still necessary questions of fact left unanswered, we affirm the decision of the Court of Appeals and remand this case for further proceedings in the district court.

MICHAEL E. WARD, Senior Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:**  Senior Judge Michael E. Ward was appointed to hear case No. 118,698 under the authority vested in the Supreme Court by K.S.A. 20-2616 to fill the vacancy on the court by the retirement of Chief Justice Lawton R. Nuss.