**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 15, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

MAELLA BLALOCK,

    Plaintiff - Appellant,

v.

SRKBS HOTEL, LLC; NINAD
SHARMA; PARESH BHAKTA;
SURENDRAKUMAR BHAKTA;
GEETA V. REDDY; RSD, LLC;
SEVJAYMAN, LLC,

    Defendants - Appellees.

No. 24-3051
(D.C. No. 2:21-CV-02552-DDC)
(D. Kan.)

_____

**ORDER AND JUDGMENT\***
_____

Before **McHUGH**, **EID**, and **FEDERICO**, Circuit Judges.
_____

Maella Blalock was asleep in her Wichita hotel room when she was hit and injured by a stray bullet that came through the wall of her room. She subsequently filed a negligence suit against the hotel's owner and operator, SRKBS Hotel, LLC, in addition to its members (collectively,

---

\* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

SRKBS).[1] Blalock claimed that SRKBS violated its duty to protect her even though a third party, and not anyone affiliated with SRKBS, had fired the bullet. While Kansas law sometimes imposes a duty on business owners to protect their patrons against the criminal acts of third parties, that duty arises only in limited circumstances. The district court granted summary judgment for SRKBS after concluding that Blalock had not presented enough evidence of such circumstances to warrant a trial. We agree, so we exercise our jurisdiction under 28 U.S.C. § 1291 to affirm.

## I

On the night of June 19, 2020, Blalock was staying as a registered guest at a Super 8 Motel owned and operated by SRKBS. That night, Gregg Townsend was working as the night auditor at the Super 8.

At approximately 11:30 p.m., Townsend rented a room on the third floor to two women. Unfortunately, those women proved to be poor guests. Shortly after renting them a room, Townsend received a noise complaint. When he went up to the women's room to investigate, he discovered roughly thirty people packed into the room, partying. He demanded that everyone

---

[1] SRKBS consists of the following members: Ninad Sharma; Paresh Bhakta; Surendrakumar Bhakta; Geeta V. Reddy; RSD, LLC; and Sevjayman, LLC.

except the two women leave. The partygoers complied and exited the building, but they ended up congregating in the parking lot.

A few minutes later, at approximately 2:35 a.m., an altercation broke out between the partygoers who remained in the parking lot, culminating in gunfire. Stray bullets went through the wall of Blalock's room on the first floor, and one struck her, causing injuries to her feet. At roughly 3:00 a.m., the shooting was reported to the Wichita Police Department, which responded promptly to the scene.

Blalock filed suit against SRKBS in the District of Kansas. In her operative complaint, she alleged that SRKBS was negligent for (1) failure to take appropriate security measures, (2) failure to enact or enforce policies, and (3) failure to train. In addition to requesting future medical expenses, noneconomic losses, and future noneconomic losses, Blalock requested 10 million dollars in punitive damages and sought to pierce the corporate veil to hold SRKBS's members liable.

Eventually, the parties filed cross-motions for summary judgment. The district court denied Blalock's motion while granting SRKBS's motion, concluding that SRKBS owed no duty to Blalock because the shooting and resulting harm were unforeseeable. After the district court entered judgment against her, Blalock timely appealed.

## II

We review a district court's summary judgment decision de novo. *Beardsley v. Farmland Co-Op, Inc.*, 530 F.3d 1309, 1313 (10th Cir. 2008). "Summary judgment is appropriate if the record evidence shows there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1255 (10th Cir. 2005) (citing Fed. R. Civ. P. 56). Because the parties filed cross-motions for summary judgment, and Blalock did not prevail before the district court, we view the inferences to be drawn from the evidence in the light most favorable to her. *Jacklovich v. Simmons*, 392 F.3d 420, 425 (10th Cir. 2004) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

## III

### A

This is a diversity case governed by Kansas law. *See Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 495–97 (1941)). Our "task is not to reach [our] own judgment regarding the substance of [Kansas] law, but simply to ascertain and apply [Kansas] law." *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665 (10th Cir. 2007) (internal quotations and citation omitted). In doing so, we "must follow the most

4

recent decisions of the state's highest court" and, "[w]here no controlling state decision exists, [we] must attempt to predict what the state's highest court would do." *Id.* at 665–66 (internal quotations and citation omitted). In conducting the latter analysis, we usually "follow the opinions of an intermediate state appellate court unless 'convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Evanston Ins. Co. v. L. Off. of Michael P. Medved, P.C.*, 890 F.3d 1195, 1200 (10th Cir. 2018) (quoting *Dullmaier v. Xanterra Parks & Resorts*, 883 F.3d 1278, 1283–84 (10th Cir. 2018)).

**B**

In negligence cases, Kansas law requires a plaintiff to prove that the defendant owed the plaintiff a legally recognized duty, the defendant breached this duty, the defendant's breach caused the plaintiff's injuries, and the plaintiff suffered damages. *Unruh v. City of Wichita*, 540 P.3d 1002, 1004 (Kan. 2024). We limit our analysis to whether SRKBS owed Blalock a duty, as that is how the district court disposed of the case and how the parties have framed this appeal.

In *Seibert v. Vic Regnier Builders, Inc.*, 856 P.2d 1332 (Kan. 1993), the Kansas Supreme Court set forth the analytical framework for evaluating the existence of duty in the circumstances present here. It explained that generally "[t]he owner of a business is not the insurer of the

safety of its patrons or customers." *Id.* at 1338. "The owner ordinarily has no liability for injuries inflicted upon patrons or customers by the criminal acts of third parties in the business' parking lot, as the owner has no duty to provide security." *Id.* A duty arises only when "circumstances exist from which the owner could reasonably foresee that its customers have a risk of peril above and beyond the ordinary and that appropriate security measures should be taken." *Id.*

When we assess foreseeability, Kansas law directs us to consider the totality of the circumstances. *Id.* at 1339. "[P]erhaps the most significant factor" in this analysis is the existence of "prior similar incidents." *Id.* But we must also examine other circumstances, such as whether the hotel was "located in a known high crime area" and whether security was in place, including the "economic feasibility" and "reasonable[ness]" of the relevant security measures.[2] *Id.* at 1339–40. That said, these circumstances do not contribute to foreseeability unless they "have a direct relationship to the harm incurred." *Id.* at 1339. And no duty attaches unless "the frequency and severity of criminal conduct substantially exceed the norm" or where

---

[2] We observe that, while Kansas courts consider the level of security in place when analyzing foreseeability and the *existence* of a duty, such facts are also relevant to the question of whether a defendant *breached* its duty to provide security. *See Shirley v. Glass*, 308 P.3d 1, 9 (Kan. 2013) ("The duty of care is intertwined with the foreseeability of harm.").

the risk of injury is so "foreseeably high that a duty should be placed upon the owner of the premises to provide security." *Id.*

Courts must tread carefully when analyzing negligence claims at summary judgment. That is because "[w]hether an actor's conduct constitutes negligence is generally a factual question left to a jury." *Roberts v. Printup*, 422 F.3d 1211, 1218 (10th Cir. 2005) (quoting *Gust v. Jones*, 162 F.3d 587, 593 (10th Cir. 1998)); *see also Hammond v. San Lo Leyte VFW Post # 7515*, 466 P.3d 886, 890 (Kan. 2020) (summary judgment "should be granted with caution in negligence cases"); *Esquivel v. Watters*, 183 P.3d 847, 850 (Kan. 2008) ("[S]ummary judgment is seldom proper in negligence cases." (internal quotation marks and citation omitted)). And specific to the issues here, "[w]hether risk of harm is reasonably foreseeable is a question to be determined by the trier of fact." *Nero v. Kan. State Univ.*, 861 P.2d 768, 779 (Kan. 1993) (quoting *Kan. State Bank & Tr. Co. v. Specialized Transp. Servs., Inc.*, 819 P.2d 587, 598 (Kan. 1991)).

Still, Kansas courts can and frequently do decide foreseeability at summary judgment. *E.g.*, *Gragg v. Wichita State Univ.*, 934 P.2d 121 (Kan. 1997); *Est. of Keubler ex rel. Coleman v. Kan. Vill. at Old Town, LLC*, --- P.3d ----, 2026 WL 912266 (Kan. Ct. App. Apr. 3, 2026); *Gardin v. Emporia Hotels, Inc.*, 61 P.3d 732 (Kan. Ct. App. 2003); *Weroha v. Craft*, 951 P.2d 1308 (Kan. Ct. App. 1998); *Est. of Bell ex rel. Bell v. 617 W. LLC*, 2022 WL

7

17881331 (Kan. Ct. App. Dec. 23, 2022) (unpublished).[3] So long as "reasonable persons could arrive at but one conclusion" even after considering the evidence in the light most favorable to the nonmoving party, it is appropriate to grant summary judgment on foreseeability. *Nero*, 861 P.2d at 779.

## C

Broadly speaking, Blalock made three arguments during summary judgment proceedings before the district court: (1) SRKBS was on notice of prior similar incidents; (2) the Super 8 Motel was in a high crime area; and (3) SRKBS did not have reasonable security measures in place. The district court rejected all three. First, the district court held that the prior incidents identified by Blalock were not violent and therefore not similar enough to make the shooting that injured Blalock foreseeable. Second, it determined that the crime maps Blalock used to prove the existence of a high crime area were too generic. And finally, it found that SRKBS had implemented at least some security measures, even if they could have been more

---

[3] Unpublished opinions from the Kansas Court of Appeals are not binding precedent under the Kansas Supreme Court's rules. Kan. S. Ct. R. 7.04(g)(2)(B). We therefore cite them only for their persuasive value and accord them less weight than published opinions, which are also not technically binding on us, but which we will usually follow absent strong evidence to the contrary. *Evanston Ins.*, 890 F.3d at 1200.

comprehensive. So, the district court granted summary judgment to SRKBS and denied Blalock's cross-motion. Although we do not agree that the prior incidents identified by Blalock were non-violent, we ultimately arrive at the same outcome as the district court.

1

We start with prior similar incidents because they are the most important part of the analysis. *See Seibert*, 856 P.2d at 1339. The key idea here is similarity. If the prior incidents that Blalock identifies are not sufficiently similar to the incident that injured her, they would lack the "direct relationship" to her injury necessary to support foreseeability. *Id.*; *see also Est. of Keubler*, 2026 WL 912266, at *11. While prior incidents need not be identical to the incident at issue, Kansas courts have rigorously enforced the similarity requirement.

For example, in *Estate of Bell*, the Kansas Court of Appeals considered foreseeability in the context of Debrylan Bell's murder in an apartment parking lot. 2022 WL 17881331, at *1. To show that the murder was foreseeable, Bell's estate proffered "a long list of incidents" that had occurred in or around the apartment complex, including "violent crimes[] such as gun crimes and rape." *Id.* at *5. The Court of Appeals rejected that argument and affirmed summary judgment against the estate, even though both the murder and the prior incidents were violent. It reasoned that the

murder was a targeted crime against the victim, so no amount of generalized prior violence could have allowed the apartment complex owners to foresee Bell's killing. *Id.*

Of course, targeted attacks are uniquely difficult to anticipate. But the Kansas Court of Appeals has likewise required high levels of similarity outside the context of a targeted crime. Its recent decision in *Estate of Keubler* illustrates this point. In that case, Robin Keubler was struck and killed when a driver tried to run over a resident of Keubler's apartment building in connection with a domestic dispute. 2026 WL 912266, at *1. Keubler's estate sued the owners of her apartment building for negligence because the hit and run crime happened behind the apartment building. *Id.* at *2. In support of foreseeability, the estate produced a long list of violent crimes that had occurred nearby, including "the murder of two male residents," "a shooting involving three victims," "two physical attacks of female victims," and "a kidnapping of four people." *Id.* at *11. Faced with the list of other violent crimes, the Court of Appeals held that none of those prior incidents supported foreseeability because none "put [the defendant] on notice that a tenant involved in a domestic dispute would try to hit another with a vehicle, then solicit a friend to do the same, as here." *Id.* So again, the Court affirmed summary judgment against the estate. *Id.* at *13.

10

Kansas courts have held that prior similar incidents contribute to foreseeability only when they are of the same type as the incident at issue. For that reason, the Kansas Supreme Court found that there was a genuine dispute about foreseeability in *Nero v. Kansas State University*, 861 P.2d 768. In that case, a female student sued the university after a male classmate sexually assaulted her. *Id.* at 771. The Kansas Supreme Court held that a reasonable factfinder could conclude that the sexual assault was foreseeable because the university was aware of a previous rape allegation against that same male classmate. *Id.* at 780. The prior incident and the incident at issue both involved sexual violence, and the allegations were made against the same individual.

The facts in Blalock's case are closer to *Bell* and *Keubler* than to *Nero*. Blalock has identified numerous reports of criminal activity taking place at or near the Super 8 Motel where she was injured, such as larceny, burglary, assault, battery, and rape. While many of those prior incidents were violent, none involved a parking lot shooting, and Blalock was injured by a shooting. Those reports are therefore not prior *similar* incidents that demonstrate foreseeability.

Resisting this conclusion, Blalock urges us to adopt the more expansive view of prior similar incidents that we applied in *Storts v. Hardee's Food Systems, Inc.*, Nos. 98-3285, 98-3220, 2000 WL 358381 (10th

Cir. Apr. 6, 2000). But *Storts* is an unpublished decision with no binding effect. Moreover, this court decided *Storts* a quarter century ago. Since then, Kansas law has passed *Storts* by – the clear and current trend among Kansas courts is to take a narrow view of similarity. *See Est. of Keubler*, 2026 WL 912266; *Est. of Bell*, 2022 WL 17881331. Indeed, the trend is to find that harm from the criminal acts of third parties is *not* foreseeable. *See also Gardin*, 61 P.3d at 739; *Weroha*, 951 P.2d at 1314.

Since our job is to "predict what the state's highest court would do," *Wade*, 483 F.3d at 666 (quotation omitted), and we draw on intermediate state appellate court decisions to do so, *Evanston Ins.*, 890 F.3d at 1200, we follow recent Kansas Court of Appeals decisions like *Keubler* and *Bell* over *Storts*. We conclude that the prior incidents put forth by Blalock are not similar enough to what occurred here to demonstrate foreseeability or to show that SRKBS owed her a cognizable duty under Kansas negligence law.

**2**

Next, we consider the evidence that the Super 8 Motel was located in a "high crime area." *Seibert*, 856 P.2d at 1339. According to Blalock, she can prove the Super 8 was in a high crime area by using crime density maps. The district court rejected that argument because the maps showed only the frequency of crime, not its severity. We again agree with the district court.

12

Tellingly, *Keubler* – which was published after oral argument in this appeal – expressly cited the district court's analysis of crime density maps and agreed that the district court had correctly applied Kansas law. 2026 WL 912266, at *10 (discussing *Blalock v. SRKBS Hotel, LLC*, 726 F. Supp. 3d 1266 (D. Kan. 2024)). This is strong evidence that the district court got it right.

In any event, the district court's reasoning aligns directly with our discussion of similarity above. Even if there were many crimes reported at or near the Super 8 Motel, those crimes do not support foreseeability unless they are similar in severity to the shooting that injured Blalock. They are not. Accordingly, Blalock's crime density maps do not establish foreseeability or merit a reversal.

**3**

Lastly, we consider Blalock's argument that SRKBS should be held liable for negligence because it failed to take adequate security measures to prevent her injuries. On this point, we understand Blalock to be arguing that crime was more likely, and therefore foreseeable, if the security measures employed by SRKBS were inadequate. The district court concluded that SRKBS could have reasonably provided more security. But the district court held that, under Kansas law, SRKBS did not have a duty to do so. Once again, we agree.

Recall that Kansas business owners are typically not liable "for injuries inflicted upon patrons or customers by the criminal acts of third parties." *Seibert*, 856 P.2d at 1338. That is because the duty to provide security is the exception, not the rule, in Kansas negligence law. *Id.* Absent a duty, the fact that a business *can* provide additional security measures does not mean that the business *must* take those measures or be held liable, even if those measures are reasonable and economical. Were we to hold otherwise, we would be transforming the exception into the rule by requiring businesses to always take every reasonable security measure.

The Kansas Court of Appeals' decision in *Weroha v. Craft* illuminates this principle. 951 P.2d 1308. In *Weroha*, the plaintiff sued an arcade for failing to protect him from a third-party assault on the arcade's property. *Id.* at 1309. He did not have evidence showing that there were prior similar incidents or that the arcade was located in a high crime area. *Id.* at 1313. Instead, the *Weroha* plaintiff argued that the security measures in place were insufficient: the arcade did not employ security guards the night of the assault, it had just one employee on duty, and it had not installed cameras or security mirrors. *Id.* at 1309, 1313. The Court of Appeals rejected this argument on summary judgment, concluding that the arcade "did not have a general duty to provide additional security" given the lack of evidence showing prior similar incidents or presence of a high crime area. *Id.* at 1314.

14

Put differently, lack of security standing alone – without evidence of prior criminal activity or presence of a high crime area – was insufficient as a matter of law to establish foreseeability.

The security deficiencies here are much like those at the *Weroha* arcade. Blalock produced evidence showing that SRKBS employed only one night auditor even though it was impossible for a single auditor to perform his required guest services duties while also maintaining adequate security at the hotel premises. SRKBS declined its employees' requests to hire security guards, too. Going beyond the security flaws in *Weroha*, the record here also shows that SRKBS failed to secure one of the Super 8's exterior doors, which could have been used by several of the partygoers. And while SRKBS maintains a do-not-rent list that includes individuals suspected of illegal activity, there is evidence indicating that enforcement of the list is spotty.

Still, as SRKBS argues, it had some security measures in place even if they were imperfect. Although it did not catch everyone on its do-not-rent list, SRKBS at least tried to implement a do-not-rent policy to protect its guests. And unlike the *Weroha* arcade, SRKBS installed both interior and exterior security cameras around its property. Finally, SRKBS provided enough lighting in the hotel parking lot for its employees to observe anything that happened there, discouraging illegal activity.

15

Taking all this evidence in the light most favorable to Blalock, we conclude that SRKBS made some effort to provide security, though it certainly could have done more. But under *Weroha*, the fact that SRKBS could have done more is insufficient as a matter of law to establish foreseeability. *See* 951 P.2d at 1313–14. What is more, the security measures that SRKBS had in place were more extensive than those at the *Weroha* arcade, making Blalock's case even weaker.

Since we dismissed Blalock's arguments about prior incidents and high crime areas above, she can only point to security deficiencies. This is not enough to create any genuine dispute of material fact about foreseeability. As such, we follow *Weroha* and conclude that SRKBS was entitled to summary judgment in its favor.

AFFIRMED.[4]

Entered for the Court

Richard E.N. Federico
Circuit Judge

---

[4] On appeal, Blalock presents only one theory of duty not based on foreseeability. Op. Br. at 60–61. She does not adequately develop that theory, so it is waived. *Petrella v. Brownback*, 787 F.3d 1242, 1260 (10th Cir. 2015).