(61 P.3d 732)
No. 88,788

ALFRED L. GARDIN, *Appellant*, v. EMPORIA HOTELS, INC. and SEAN CASSIDY, *Appellees*.

Opinion filed January 24, 2003.

*Michael C. Helbert*, of Law Offices of Michael C. Helbert, of Emporia, for the appellant.

*Brian G. Boos*, of Gehrt & Roberts, Chartered, of Topeka, for the appellees.

Before BEIER, P.J., PIERRON, J., and PADDOCK, S.J.

PIERRON, J.: Alfred L. Gardin appeals the district court's summary judgment in favor of Emporia Hotels, Inc. (Emporia Hotels).

Emporia Hotels owns and operates the University Inn (motel). Mike Patel became the manager of the motel when Emporia Hotels purchased it in December 1997. Patel regularly worked at night between 11 p.m. and 6 a.m.

From the motel's front desk, Patel could see the enclosed glass entrance to the lobby. Patel kept the doors to the lobby locked during his shift. If a person looked like he or she wanted to rent a room after hours, Patel would unlock the doors to the entrance and admit the person to the lobby.

There was little evidence of any prior crimes taking place at the motel. Until the date of the incident in this case, October 31, 1998, Patel had never had any problem with criminal activity at the motel. Furthermore, Patel did not remember ever receiving a request for help from a motel guest after 11 p.m.

Prior to this incident, Patel had rented rooms to George Phillips of Worldwide Readers Service, Inc. (Worldwide) sales group on one or two occasions. Phillips usually rented three rooms at a time and would have three or four people in each room. Phillips rented rooms from Patel on the night of the incident. Sean Cassidy was one of the sales group members who was staying at the motel that night.

At around 11 p.m. on October 30, 1998, Gardin, and his brother, Maurice, went to a bar. When the bar closed at 2 a.m., Gardin waited for Maurice outside. Maurice came out of the bar accompanied by two women with whom he had been dancing. Maurice told Gardin he wanted to get together with one of the women. The woman said she needed to pick up a car seat. In Maurice's car, the brothers followed the women to the parking lot of the motel. Gardin had never been to the motel before.

The woman told Maurice she would return as soon as she retrieved the car seat. The women then appeared to go into a motel room. A few minutes later, two men appeared and told Gardin and Maurice to leave because the women did not want to go with them. Maurice grew angry and an argument ensued. Gardin decided to leave and began to walk to his apartment nearby. Before Gardin could leave, several men he recognized from the bar drove up and blocked his way. Gardin ran to the motel lobby's glassed entry to get help.

Gardin claims he repeatedly asked Patel to let him in, but Patel denied him entrance. Gardin testified a significant period of time elapsed between when he first asked Patel for help and when he

was attacked by the men. On the other hand, Patel testified the men attacked Gardin simultaneously with Gardin's demands to be let into the lobby. Patel testified he refused to admit Gardin, but told him the police were on the way.

During the fight, Gardin was stabbed by Cassidy several times. The police arrived minutes later, and Gardin was taken to the hospital for treatment of his wounds.

Gardin filed suit against Emporia Hotels, Cassidy, and Worldwide. Following discovery, Emporia Hotels filed a motion for summary judgment, arguing that Gardin was a trespasser at the motel and, thus, Emporia Hotels owed him no duty beyond refraining from willfully or wantonly injuring him. Gardin contended there was no evidence he was a trespasser, and Emporia Hotels owed him a duty of reasonable care under the circumstances.

The district court granted Emporia Hotels' motion for summary judgment based on two findings: (1) Gardin was a mere trespasser rather than an invitee or licensee of Emporia Hotels, and (2) under the totality of the circumstances, Emporia Hotels had no reason to be aware of any possible problems with crime in the area, and Cassidy's act was not foreseeable.

The district court entered default judgment against Cassidy, who was imprisoned and did not answer Gardin's petition. Worldwide settled with Gardin and was dismissed from the lawsuit. The only remaining defendant is Emporia Hotels.

The court's standard of review for appeals of summary judgment is well-established:

" 'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citation omitted.]' " *Mitchell v. City of Wichita*, 270 Kan. 56, 59, 12

P.3d 402 (2000) (quoting *Bergstrom v. Noah*, 266 Kan. 847, 871-72, 974 P.2d 531 [1999]).

Cases involving questions of liability under these circumstances are often fact sensitive. Because Gardin and Emporia Hotels agree upon the material facts of this case, we have de novo review of the district court's order granting summary judgment. See *Veatch v. Beck*, 252 Kan. 1081, 1082, 850 P.2d 923 (1993).

In his petition, Gardin alleges the Emporia Hotels breached its duty to him by negligently failing to take proper precautions to prevent the assault he suffered and by failing to come to his aid. In negligence actions, summary judgment should be granted with caution. *Fettke v. City of Wichita*, 264 Kan. 629, 632, 957 P.2d 409 (1998). Summary judgment may be appropriate, however, when the plaintiff cannot meet the basic requirements for negligence claim.

"To recover for negligence, the plaintiff must prove the existence of a duty, breach of that duty, injury, and a causal connection between the duty breached and the injury suffered. Whether a duty exists is a question of law. Whether the duty has been breached is a question of fact." *Reynolds v. Kansas Dept. of Transportation*, 273 Kan. 261, Syl. ¶ 1, 43 P.3d 799 (2002).

Based on the undisputed facts, the district court found that Emporia Hotels did not owe Gardin a duty to protect him or come to his aid. This is a question of law over which this court has unlimited review. *Gragg v. Wichita State Univ.*, 261 Kan. 1037, 1044, 934 P.2d 121 (1997).

Generally speaking, a person has no duty to control the conduct of a third person to prevent harm to others unless there is a "special relationship" between the parties. *Gragg*, 261 Kan. at 1045; accord Restatement (Second) of Torts § 315 (1964). This may not be as humane a policy as we might like to see, but it is the law. One such "special relationship" exists between an innkeeper and its guests. The Restatement (Second) of Torts § 314A(2) (1964) states an innkeeper is under a duty to take reasonable action to protect its guests from unreasonable risk of physical harm and to give them first aid. Following this rule, in *Gould v. Taco Bell*, 239 Kan. 564, Syl. ¶ 1, 722 P.2d 511 (1986), the court declared: "A proprietor of

an inn, tavern, restaurant, or like business is liable for an assault upon a guest or patron by another guest or third party where the proprietor has reason to anticipate such an assault and fails to exercise reasonable care to forestall or prevent the same." The proprietor's duty to protect its guests or patrons only arises when the impending danger becomes apparent or would put a careful and prudent person on notice. 239 Kan. 564, Syl. ¶ 3.

Gardin argues an innkeeper's duty extends beyond its registered guests to include patrons who have not yet checked into the motel or the guests of registered guests. His argument finds support at 40A Am. Jur. 2d , Hotels, Motels, Etc. § 82, pp. 534-35:

"Persons upon the premises of the inn in response to an invitation to visit registered guests at proper times, for lawful purposes, and who remain within the boundaries of their invitation are invitees, to whom the innkeeper owes the duty of exercising ordinary or reasonable care for their safety while upon the premises of the inn. When such a visitor or caller is injured upon the premises of the inn, the innkeeper is under a duty to exercise reasonable care to see that he or she receives prompt and proper attention and treatment."

While Gardin is correct that the law extends an innkeeper's duty beyond its registered guests, it must have an outer limit. Gardin was not invited to visit a registered guest of the motel. He was told by one of the women to wait for her in the motel's parking lot.

Patel testified that the women were not registered guests of the motel. Garden had no evidence to the contrary. Although an innkeeper owes a duty to its guests and their guests, the relationship between Gardin and Emporia Motels is too far removed to fall into the category of the special relationship that requires an innkeeper's affirmative acts. "When the plaintiffs are not guests of the hotel at the time of the assault, no special relationship exists between the plaintiffs and the hotel operators that gives rise to a duty to protect the plaintiffs from the acts of third parties." 40A Am. Jur. 2d, Hotels, Motels, Etc. § 111, p. 560. At best, Gardin was a guest of a guest of a guest, and maybe not that.

A second "special relationship" that imposes an affirmative duty to act exists between a possessor of land who opens it to the public and members of the public who enter the land in response to the invitation. *Gragg*, 261 Kan. at 1046; Restatement (Second) of Torts

§ 314A. Specifically, Gardin argues § 344 of the Restatement (Second) of Torts (1964) imposed a duty on Emporia Hotels to protect Gardin from Cassidy's acts:

"A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

"(a) discover that such acts are being done or are likely to be done, or

"(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise protect them against it."

This section of the Restatement has been adopted in Kansas. See, e.g., *Gould*, 239 Kan. at 568.

A business' duty does not extend to every person who enters the property of the business, however. "The duty of care owed by a premises owner to an entrant upon the land is dependent upon the status of the person entering the premises." *Gould*, 239 Kan. at 567. Again, because the facts surrounding Gardin's entrance onto the motel property are undisputed, Gardin's status is a question of law for the court. 62 Am. Jur. 2d, Premises Liability § 87.

As observed in comment a to Restatement (Second) of Torts § 344, the duty to protect others from the harmful acts of third persons is only owed to "business visitors," commonly known as invitees. " 'An invitee is one who enters or remains on the premises of another at the express or implied invitation of the possessor of the premises for the benefit of the inviter, or for the mutual benefit and advantage of both the inviter and invitee.' " *Mozier v. Parsons*, 256 Kan. 769, 771, 887 P.2d 692 (1995) (quoting *Gerchberg v. Loney*, 223 Kan. 446, 448-49, 576 P.2d 593 [1978]).

It seems in Kansas this duty would extend to licensees as well, due to *Jones v. Hansen*, 254 Kan. 499, Syl. ¶ 2, 867 P.2d 303 (1994), a case involving a dangerous condition of the property in which the Kansas Supreme Court abandoned the distinctions between the duty owed to invitees and licensees.

The duty owed by an occupier of land to invitees and licensees alike is one of reasonable care under all circumstances. " 'A licensee is one who enters or remains on the premises of another by virtue

of either the express or implied consent of the possessor of the premises, or by operation of law . . . .' " *Mozier*, 256 Kan. at 771.

The district court determined that Gardin was not an invitee or a licensee, but a trespasser. *Jones* did retain the classification of trespassers and the duties owed to them. 254 Kan. 499, Syl. ¶ 4. " '[A] trespasser is one who enters the premises of another without any right, lawful authority, or an express or implied invitation or license.' " In the case of a trespasser, the occupier of land owes a duty to refrain from willfully, wantonly, or recklessly causing injury. *Mozier*, 256 Kan. at 771. Here, there is no evidence the motel acted willfully, wantonly, or recklessly toward Gardin. Thus, if the district court was correct in finding Gardin was a trespasser, and Gardin has no cause of action as a matter of law, the district court should be affirmed.

Gardin was not an invitee. He was not renting a room at the motel, nor did he have plans to do so. Emporia Hotels did not benefit from his presence. Gardin was not visiting a registered guest of the motel, so his presence did not even indirectly benefit Emporia Hotels. Although Gardin argues the motel held itself open to the public by having a private club or restaurant on the premises, Patel testified that the restaurant and club closed at 9 p.m., well before Gardin entered the premises. Thus, there is no possibility that Gardin was on the premises as an invitee of the restaurant or club. Gardin was not an invitee, business or otherwise.

However, Gardin is arguably a licensee. Comment h to section 330 of the Restatement (Second) of Torts (1964) states that a licensee includes persons

"whose presence upon the land is solely for his own purposes, in which the possessor has no interest, and to whom the privilege of entering is extended as a mere personal favor to the individual, whether by express or tacit consent or as a matter of general or local custom."

People often gather in parking lots without intending to patronize the business that owns the parking lot. Gardin was waiting for a woman who appeared to have some connection with the motel. It could be argued that a motel should expect people will enter its property without intending to rent a room from the motel. How-

ever, a business owner would owe no higher duty to insure the safety of a licensee than that of a patron or customer.

As a general rule, an owner of a business does not insure the safety of his patrons or customers. This means the owner of a business ordinarily does not have a duty to provide security to protect against the criminal acts of third parties in a parking lot. However, an exception exists when circumstances indicate that a business owner's customers have a risk of peril beyond the ordinary. *Seibert v. Vic Regnier Builders, Inc.*, 253 Kan. 540, 548, 856 P.2d 1332 (1993).

In *Seibert*, the plaintiff was attacked in the defendant's parking garage by an unknown assailant. The district court granted the defendant's motion for summary judgment because there were no prior similar incidents indicating such a criminal act was foreseeable. The Kansas Supreme Court reversed, holding that the district court should determine foreseeability based on the totality of the circumstances rather than just the history of prior crimes in the area, although history was a factor. The district court was also instructed to review the level of crime in the area, the lighting in the garage, and other relevant factors. 253 Kan. at 550.

In the case at hand, the district court found the crime against Gardin was not foreseeable under the totality of the circumstances in accordance with *Seibert*. Foreseeability is generally a question of fact for the jury. However, when there is no evidence to indicate that the cause of a plaintiff's injuries was foreseeable, summary judgment may be appropriate. See *Cullip v. Domann*, 266 Kan. 550, 562, 972 P.2d 776 (1999) (when there was no evidence that parents should have known they needed to be in control of their son, there is no liability for son's negligent act).

The only evidence of prior crime at the motel was that in 1998, an unknown individual took money from a cash register at the front desk. Patel testified that he knew of no other criminal activity at the motel. Although the motel is located near an interstate highway, there is no evidence that this is a high-crime neighborhood. It does not appear that the lighting in the parking lot would have prevented the attack, since it was committed in a lighted lobby area in front of the desk clerk. There was no evidence to support a

finding that there was any foreseeable likelihood of a criminal attack on the premises sufficient to require protective action.

Another analogous case is *Kimple v. Foster*, 205 Kan. 415, 469 P.2d 281 (1970). There, the plaintiff, who was a guest at the defendant's bar, was attacked by a group of other patrons. The court found that the defendant had reason to know that his guests were in danger because the group had been unruly for several hours before the attack. Having been put on notice of the possible danger to other patrons, the defendant had an affirmative duty to protect them. 205 Kan. at 418-19; see also *Gould v. Taco Bell*, 239 Kan. at 569 (restaurant clerks knew plaintiff's assailants had started a fight on a previous occasion and thus had a duty to protect plaintiff from attack).

In this case, there is no evidence the motel knew that members of the Worldwide sales group had engaged in prior criminal activity. It was not foreseeable that Cassidy would follow Gardin into a lighted entrance and stab him repeatedly in front of Patel. Unlike the situation in *Seibert* and *Gould*, Patel had no warning that Cassidy was violent and, thus, under the totality of the circumstances, had no duty to protect Gardin from this unforeseeable attack.

Affirmed.