No. 128,715

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ESTATE OF ROBIN KUEBLER,
by and through its Administrator, CYNTHIA COLEMAN,
and CYNTHIA COLEMAN, Heir at Law,
*Appellants*,

v.

KANSAS VILLAGE AT OLD TOWN, LLC,
*Appellee.*

SYLLABUS BY THE COURT

1.

Although summary judgment is rarely appropriate in negligence cases, it is proper when the plaintiff fails to establish a prima facie case showing the existence of any one of the four elements of negligence.

2.

Landlords owe a duty of reasonable care to their tenants, but this does not make the landlord the insurer of a tenant's safety. Under the circumstances here, a landowner has no duty to protect an invitee on the landowner's premises from a third party's criminal attack unless the attack is reasonably foreseeable.

3.

Although prior incidents may be the most significant factor in determining foreseeability, the appropriate test for deciding whether a landlord has a duty to provide security is to consider the totality of the circumstances.

1

4.

The circumstances considered in regard to foreseeability must have a direct relationship to the harm incurred. Thus, a crime density map showing the frequency of crimes but not the severity of crimes committed near the victim's apartment fails to show foreseeability of violent crime.

5.

Declarations opposing summary judgment must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the declarant is competent to testify on the matters stated. Thus, hearsay testimony that would be inadmissible at trial but is included in a declaration cannot defeat summary judgment.

Appeal from Shawnee District Court; MARY E. CHRISTOPHER, judge. Oral argument held January 6, 2026. Opinion filed April 3, 2026. Affirmed.

*Melinda G. Young*, of Melinda Young Law, LLC, of Hutchinson, for appellants.

*J. Wesley Smith*, *Lawrence J. Logback*, and *Olivia G. Ruschill*, of Simpson, Logback, Lynch, Norris, P.A., of Overland Park, for appellee.

Before SCHROEDER, P.J., MALONE and GARDNER, JJ.

GARDNER, J.:  Robin Ann Kuebler was killed in a hit and run incident behind her apartment building, owned by Kansas Village at Old Town, LLC. Kuebler's mother, Cynthia Coleman, and Kuebler's estate sued Kansas Village for negligence, claiming Kansas Village's inadequate security caused Kuebler's death. The district court granted summary judgment to Kansas Village, finding no duty existed because Kuebler was struck and killed on public property. Coleman and Kuebler's estate appeal, arguing primarily that the district court failed to answer a necessary question—whether the risk of harm was foreseeable. Finding no reversible error, we affirm.

2

FACTUAL AND PROCEDURAL BACKGROUND

At around 8 p.m. on April 3, 2018, Alexis Nolte hit and killed Kuebler while driving through the alleyway behind Kuebler's apartment building. The building is a part of an apartment complex in Topeka owned by Kansas Village. Kuebler had lived in one of Kansas Village's apartments since June 2017.

According to the parties' pleadings, the fatal incident stemmed from domestic violence between two other residents of Kuebler's apartment building—Darrell Alston and his girlfriend, Jayme Douglas. Earlier that day, they got into an argument and Alston kicked Douglas out. Alston later left the apartment, but the couple continued to argue through text messages throughout the day. Douglas later agreed to pick Alston up in her truck and take him back to the building. After returning, Douglas and Alston argued in the truck for a while and witnesses heard them yelling profanities at each other. According to Douglas, Alston pulled a knife on her. Alston then exited the truck and as he was walking through the parking lot, Douglas unsuccessfully tried to run him over several times. She contacted Nolte, who drove to the apartment building in a Ford Explorer. When Nolte arrived, Douglas pointed her toward Alston's direction. Nolte sped through the area, looking for Alston so she could also try to run him over.

Around this time, Kuebler exited the apartment building because another neighbor had told Kuebler that someone had hit her car during the chaos. Kuebler went outside to check her car, which was parked behind the building in a marked parking spot adjacent to an alleyway. After Kuebler stepped into the alleyway, she was hit by Nolte's Explorer. The impact threw Kuebler onto its hood, where she was suspended for several feet before falling to the ground. Nolte then ran Kuebler over and dragged her body behind the Explorer for a distance as she fled from the scene. Emergency personnel arrived shortly after and pronounced Kuebler dead.

3

*Legal Proceedings*

Nolte was arrested and charged with reckless second-degree murder, aggravated assault with a deadly weapon, and causing an accident involving death. She later pleaded guilty to each offense.

Coleman sued Kansas Village, State Farm Mutual Automobile Insurance Company, Nolte, and the owner of the Ford Explorer (Kylee King) for wrongful death. Coleman filed the petition individually, as Kuebler's heir, and on behalf of Kuebler's estate (collectively, Appellants). The petition alleged that Kansas Village was negligent for failing to: (1) "protect tenants and their guests from foreseeable risk of peril"; (2) "provide appropriate and adequate security"; (3) "provide access control to the property"; and (4) "maintain the rental property for the health and safety of residents and visitors."

*Summary Judgment Proceedings*

Appellants settled their claims against State Farm. The same month, Kansas Village moved for summary judgment. It claimed that it had no duty to protect Kuebler in a public alley over which it had no control and had no duty to protect individuals from a "random" hit and run attack by third parties.

Appellants opposed the motion and moved to continue discovery. One exhibit in support of these motions was a declaration from Melinda G. Young, Appellants' attorney. Young alleged that she had consulted a "security expert" who had investigated this case and interviewed several witnesses. Her declaration also states that Kansas Village's security manager communicated to Young that he "had concerns about crime at the apartment complex" and had previously told Kansas Village that additional security was needed. The security manager also allegedly reported to Young that he was "aware that

4

Alexis Nolte had previously caused trouble at the apartment complex and believed her to be a security risk to tenants."

The district court did not refer to these allegations in Young's declaration in denying the motion to continue. It reviewed the declaration, however, and found that Appellants had failed to give any specific justification for delaying a ruling on the summary judgment motion. Appellants thus failed to show "specified reasons" why they could not present facts necessary to justify their opposition to the motion, as K.S.A. 60-256(f) requires. Because nearly 17 months had elapsed since the case was filed and it was unclear why Appellants needed more time, the district court denied their motion to continue. Appellants challenge the grant of summary judgment, yet they do not appeal the district court's denial of their motion to continue discovery.

The district court did not refer to the allegations in Young's declaration in deciding Kansas Village's summary judgment motion, although it considered Appellants' other exhibits in support of their response, including reports to police of incidents at Kuebler's apartment building and a crime density map.

The district court granted summary judgment for Kansas Village, finding it did not owe Kuebler a duty of care while she was on public property. The district court recited the evidence showing where Kuebler had been hit and killed, then found the incident had occurred in "the public alley or right of way." The district court agreed that Kansas Village owed its tenants a general duty of reasonable care but concluded that this duty did not extend beyond its property lines.

Appellants claimed that Kansas Village was liable because it had assumed control over the alley by making special use of the area for its tenants and visitors. But the district court rejected this argument as well. The district court found that the prevailing rule in Kansas is that land or business owners typically do not have a duty to protect

5

against third parties or injuries that occur on another's property. And Kansas Village had no control over the alleyway and thus no duty of care to protect Kuebler under the circumstances. The district court noted possible exceptions when an injury is reasonably foreseeable and a duty of care arises before the off-premises injury occurs. But no evidence showed that any representative of Kansas Village witnessed or somehow contributed to Kuebler's injuries. It thus found that Kansas Village owed no duty to Kuebler.

Alternatively, the district court considered the foreseeability of Kuebler's injuries. The district court summarized relevant caselaw and the exhibits Appellants had submitted to show criminal activity in her neighborhood. It then held that "[n]o evidence indicates that the hit and run vehicular manslaughter was foreseeable, or that there were any preventative measures defendant could have taken since the incident occurred on public property." It thus held that Kansas Village could not be held liable for negligence.

Appellants now appeal the district court's summary judgment order.

ANALYSIS

Appellants do not challenge the district court's determination that the fatal incident that resulted in Kuebler's death occurred in a public alleyway. Still, they argue that the district court erroneously found as a matter of law that Kansas Village owed Kuebler no duty of care because she was injured outside the boundaries of Kansas Village's property. Appellants contend that in negligence cases, the place where the harm occurs does not matter if a duty arises and is breached while the injured party is on the defendant's property. Appellants also assert that Kansas Village had a duty to provide its tenants with additional security from third parties because the risk of harm from violent crimes was reasonably foreseeable under the circumstances. We agree that the district court may

6

have focused too much on the boundary lines of the property, yet it correctly concluded that no evidence shows the harm Kuebler suffered was foreseeable. We thus affirm.

*Standard of Review*

Because this court reviews the same evidence and is in the same position as the district court when it decided the summary judgment motion, we apply the same standards as the district court does:

> "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions on file, and supporting affidavits show that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. The district court must resolve all facts and reasonable inferences drawn from the evidence in favor of the party against whom the ruling is sought. When opposing summary judgment, a party must produce evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issue in the case. Appellate courts apply the same rules and, where they find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment is inappropriate. Appellate review of the legal effect of undisputed facts is de novo. [Citation omitted.]" *GFTLenexa, LLC v. City of Lenexa*, 310 Kan. 976, 981-82, 453 P.3d 304 (2019).

Summary judgment is rarely appropriate in negligence cases because they typically involve fact-intensive situations with conflicting viewpoints about what occurred. But summary judgment is proper where the plaintiff fails to establish a prima facie case demonstrating the existence of any one of the four elements of negligence: "existence of a duty, a breach of that duty, an injury, and proximate cause." *Montgomery v. Saleh*, 311 Kan. 649, 653, 466 P.3d 902 (2020).

The first element, the existence of a duty, is a question of law. One of the district court's primary roles in reviewing negligence cases is to articulate the legal duty that the

factfinder must apply when deciding the facts. Breach and causation are questions of fact that must generally be resolved by the trier of fact. See *Granados v. Wilson*, 317 Kan. 34, 44, 523 P.3d 501 (2023) (citing *Reardon v. King*, 310 Kan. 897, 903, 452 P.3d 849 [2019]). The foreseeability of a risk of harm is also generally a question of fact. It is only when reasonable persons could arrive at only one conclusion that the court may determine the question as a matter of law. *Nero v. Kansas State University*, 253 Kan. 567, 583, 861 P.2d 768 (1993). But as we explain below, in this case the questions of foreseeability and duty are intertwined.

*Basic Legal Principles of Premises Liability*

Under a theory of premises liability, the general rule is that a landowner owes a duty of reasonable care to all visitors. *Jones v. Hansen*, 254 Kan. 499, 509-10, 867 P.2d 303 (1994). "To hold a defendant liable for failure to keep premises in a reasonably safe condition, the defendant must be the owner, occupier, or possessor of the premises." *Miller v. Zep Mfg. Co.*, 249 Kan. 34, 41, 815 P.2d 506 (1991). See *Rogers v. Omega Concrete Systems, Inc.*, 20 Kan. App. 2d 1, 5, 883 P.2d 1204 (1994) ("It is obvious that, without control, the responsibility for the dangerous or hazardous condition cannot exist.").

A person generally does not owe a duty to control the conduct of a third person to prevent harm to others unless the person has a "'special relationship'" with the third party or the injured party. *South v. McCarter*, 280 Kan. 85, 95, 119 P.3d 1 (2005); *Thies v. Cooper*, 243 Kan. 149, 151, 753 P.2d 1280 (1988) (citing Restatement [Second] of Torts § 315 [1964]). Thus in *McCarter*, the owner of a mobile home park had no duty to protect a child of residents who was injured in a fistfight with guests of another resident. Although the owner had a duty to keep common areas safe, injury did not occur in a common area, and the mobile home park had no specific information about the guests' past conduct and the actual risk involved.

8

Special relationships include those between a parent and child, master and servant, the possessor of land and licensees, persons in charge of one with dangerous propensities and third parties, and persons with custody of another and third parties. *Williams v. C-U-Out Bail Bonds*, 310 Kan. 775, 788-89, 450 P.3d 330 (2019). And a specific duty may also be imposed by statute. See *Montgomery*, 311 Kan. at 655. But the landlord-tenant relationship is not among the special relationships that create a duty.

Still, Kansas caselaw recognizes that landlords owe a duty of reasonable care to their tenants. See *Nero*, 253 Kan. at 583. Yet this does not make the landlord the insurer of a tenant's safety. "[A] landowner has no duty to protect an invitee on the landowner's premises from a third party's criminal attack unless the attack is reasonably foreseeable." 253 Kan. at 584; see also *Seibert v. Vic Regnier Builders, Inc.*, 253 Kan. 540, Syl. ¶ 3, 856 P.2d 1332 (1993) (finding an exception to the general rule about third-party crimes where "circumstances exist from which the owner [of a business] could reasonably foresee that its customers have a risk of peril above and beyond the ordinary and that appropriate security measures should be taken").

I.      *No duty is established by control or special relationship.*

Appellants tacitly concede that they must show a special relationship exists to succeed in claiming that Kansas Village owed a duty to provide its tenants security from crimes committed by third parties. Appellants argue that Kansas Village's duty arises under Restatement (Second) of Torts § 344—Business Premises Open to Public:  Acts of Third Persons or Animals (1964):

> "A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally

harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

> "(a) discover that such acts are being done or are likely to be done, or
>
> "(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it."

Both parties cite *Nero*, which discussed § 344 of the Restatement. There, our Supreme Court considered whether a university had a duty to protect a female student against criminal conduct by a male student. The petitioner sued the university after she was sexually assaulted by that male student in a coed dormitory's lounge. The university knew that the male student had been charged with rape about a month earlier in a different coed dormitory, and it had responded by temporarily assigning him to an all-male dormitory. But it later allowed him to move into the coed dormitory where the sexual assault occurred. 253 Kan. at 569-70.

Our Supreme Court found that a university-student relationship does not alone impose a duty on universities to protect students from the actions of fellow students or third parties. But because the university was acting as a landlord, our Supreme Court viewed the issue in the context of a landlord-tenant relationship. *Nero* held that as a landlord, the university owed its students in the dormitories a duty of reasonable care, but generally, "a landowner has no duty to protect an invitee on the landowner's premises from a third party's criminal attack unless the attack is reasonably foreseeable." 253 Kan. at 584. After reviewing § 344 of the Restatement and several cases from other jurisdictions discussing that section, our Supreme Court held that the university had a duty to protect students against foreseeable crimes by third parties in common areas. 253 Kan. at 584. And because reasonable people would disagree whether the attack on Nero was foreseeable, the trial court erred by granting summary judgment. 253 Kan. at 585.

Appellants argue that based on *Nero*'s analysis, Restatement (Second) of Torts § 344 governs all negligence actions involving landlord-tenant relationships. Appellants

10

thus claim that under *Nero*, a landlord-tenant relationship triggers a special duty to protect against all foreseeable violent crimes by third parties.

But this argument is overly broad. *Nero* did not hold that under Restatement (Second) of Torts § 344, a duty related to third-party criminal conduct exists in all landlord-tenant cases. A similar argument was raised in *McCarter*, yet our Supreme Cout declined to make such a finding. The *McCarter* court considered the principles discussed here but did not specifically find the parties lacked a special relationship, as Kansas Village requests. Instead, *McCarter* ultimately held that no duty existed because the harm by the third party was not reasonably foreseeable under the circumstances. See 280 Kan. at 96, 102-06.

*Nero* is also distinguishable because the university had specific knowledge that the third party had recently committed a similar crime, and the university controlled his housing assignment. Here, no facts show that Kansas Village had any knowledge that Nolte had ever committed a similar crime, and Kansas Village had taken no acts to facilitate her criminal acts or to put third parties at risk.

Also, unlike in *Nero*, the parties here had a standard landlord-tenant relationship governed by a lease agreement. Cf. *McCarter*, 280 Kan. at 102 (distinguishing *Nero* similarly where "a landlord-tenant relationship clearly exist[ed]"). Kuebler's lease shows that she did not expect Kansas Village to provide tenants security from third parties. Kuebler acknowledged in her lease that Kansas Village made no representations regarding the effectiveness or operability of any security measures nor any guarantees against "criminal or wrongful acts of third parties." To the contrary, the lease states that each resident, occupant, guest, and invitee "is responsible for protecting his or her own person or property."

11

Another distinction here is that the harm in *Nero* occurred on the university's campus, in the dormitory's lounge. *Nero*'s holding was specifically limited to that fact: "The landlord had a legal duty to use reasonable care under the circumstances in protecting the occupants of the coed housing unit from foreseeable criminal conduct *while in a common area*." (Emphasis added.) 253 Kan. 567, Syl. ¶ 15. Somewhat similarly, *McCarter* clarifies that "[a] landlord has a duty to exercise reasonable care to protect its tenants from a third party's criminal attack if such an attack was reasonably foreseeable *and within the landlord's control*." (Emphasis added.) 280 Kan. 85, Syl. ¶ 4. Common areas are within the landlord's control; public alleys generally are not.

It is undisputed that Nolte's criminal conduct did not occur in a common area or on Kansas Village's property. *Nero* does not show that Kansas Village owed its tenants a duty to protect against crimes committed by third parties on someone else's property. As the district court correctly found, liability cannot generally be assessed for matters outside Kansas Village's control. Cf. *Hall v. Quivira Square Development Co.*, 9 Kan. App. 2d 243, 244, 675 P.2d 931 (1984) (holding that absent any showing of control over the common area of a mall, a store owner was not liable for an accident in the parking lot). Such a ruling would improperly impute a legal duty on Kansas Village to ensure its tenants' safety. See *Nero*, 253 Kan. at 584.

II.     *No duty based on foreseeability of risk of harm is shown.*

In both landlord-tenant and business owner-customer cases, our Supreme Court has held that a duty may arise where the risk of harm is reasonably foreseeable. See, e.g., *Nero*, 253 Kan. at 583-85 (addressing reasonable foreseeability on appeal from summary judgment granted for landlord); *Seibert*, 253 Kan. at 548 (finding liability may exist when business owner can reasonably foresee that customers have a risk of peril above and beyond the ordinary).

12

Whether a risk of harm is foreseeable is generally a question that must be determined by the trier of fact. See *Hammond v. San Lo Leyte VFW #7515*, 311 Kan. 723, 727, 466 P.3d 886 (2020) ("summary judgment should be granted with caution in negligence cases"); *Esquivel v. Watters*, 286 Kan. 292, 296, 183 P.3d 847 (2008) ("'Summary judgment is seldom proper in negligence cases.'"). "'Only when reasonable persons could arrive at but one conclusion may the court determine the question as a matter of law.'" *Nero*, 253 Kan. at 583. We thus address the foreseeability of Kuebler's harm, with that caveat in mind.

The petitioner in *Seibert* was shot in the parking lot of a shopping center during an armed robbery. 253 Kan. at 541-42. Our Supreme Court found that despite the general rule that businesses are not required to protect customers against attacks by third parties, a duty may arise when a risk of harm becomes foreseeable. Specifically, a duty forms "where circumstances exist from which the owner could reasonably foresee that its customers have a risk of peril above and beyond the ordinary and that appropriate security measures should be taken." 253 Kan. at 548.

The district court granted the shopping center summary judgment after reviewing the evidence for prior incidents only. But its analysis ignored other factors that the petitioner had raised, including an allegedly high crime rate and dim lighting in the underground parking lot. *Seibert*, 253 Kan. at 542. Our Supreme Court reversed, finding the district court had applied too narrow a test. It found that prior incidents may likely be the "most significant factor" in determining foreseeability, but the appropriate test for deciding whether a duty exists to provide certain security measures is to consider the totality of the circumstances. 253 Kan. at 549.

A. *Evidence of Foreseeability*

Appellants alleged in their petition that Kansas Village had general knowledge about the crime rate in the area surrounding its apartment complex and had specific knowledge related to Nolte. On appeal, Appellants argue that Kuebler's harm was foreseeable based on:

- facts in Young's declaration about crime and Nolte;
- the fight between Douglas and Alston in Kansas Village's parking lot;
- the crime density map showing Kuebler's apartment building in a high crime area; and
- reports to police of prior incidents at Kuebler's apartment building.

We examine these four factors below.

1. *We disregard hearsay in counsel's declaration, as the district court did.*

Appellants submitted a declaration from Young, Appellants' attorney, in support of their motion to continue discovery and to oppose summary judgment. Although the declaration asserted facts that needed further development through discovery, Appellants now rely on the attorney's declaration as containing substantive facts precluding summary judgment. Although Kansas Village suggests an ethical issue arising from Young doing so, we find it unnecessary to address that issue.

Attorney Young's declaration states:

14

- Young had consulted a "security expert" who investigated this case;
- Kansas Village's security manager, Paul Freye, stated that he "had concerns about crime at the apartment complex," had attended multiple meetings with Kansas Village's representatives to discuss security measures, and had informed Kansas Village that additional security was needed; and
- Freye also reported that he was "aware that Alexis Nolte had previously caused trouble at the apartment complex and believed her to be a security risk to tenants."

The district court made no reference to these facts in its summary judgment decision.

Although not notarized, the document meets the requirements for a declaration under penalty of perjury in Kansas. See K.S.A. 53-601. It thus meets the "affidavit or declaration" requirement of K.S.A. 60-256(e)(2) for opposing a summary judgment motion: "an opposing party . . . must, by affidavits or by declarations under K.S.A. 53-601, . . . set out specific facts showing a genuine issue for trial."

Kansas Village primarily asserts that Young's statements in her declaration about Freye's statements are inadmissible hearsay. We agree. On its face, Young's statements about Freye's statements, beliefs, or knowledge are hearsay—out of court statements offered to prove the truth of the matter asserted. See K.S.A. 60-460; cf. *Lovitt v. Board of Shawnee County Comm'rs*, 43 Kan. App. 2d 4, 15, 221 P.3d 107 (2009) (In the course of discovery, plaintiff tried to introduce into the record a social worker's opinion through plaintiff's affidavit but the district court struck the hearsay statements in the affidavit.). Young does not contend that her statements are not hearsay or that Freye's statements to her are not hearsay or that any exception to the hearsay rule applies. "[H]earsay testimony that would be inadmissible at trial may not be included in an affidavit to defeat summary judgment because '[a] third party's description of [a witness'] supposed testimony is not suitable grist for the summary judgment mill.'" *Thomas v. IBM*, 48 F.3d 478, 485 (10th

15

Cir. 1995) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 [1st Cir. 1990]). Relatedly, K.S.A. 60-256(e)(1) requires that declarations opposing summary judgment "be made on personal knowledge, set out facts that would be admissible in evidence and show that the affiant or declarant is competent to testify on the matters stated." Young's declaration fails that test.

Thus, the district court correctly did not consider these statements in Young's declaration to be facts precluding summary judgment.

2.  *The fight between Douglas and Alston in its parking lot fails to impute knowledge to Kansas Village.*

Appellants compare this case to *Hammond*. In *Hammond*, our Supreme Court clarified that a defendant may be liable for reasonably foreseeable injuries even if the physical harm "takes place entirely outside the boundaries of [the defendant's] land." 311 Kan. at 731. But for that to be true, the defendant's duty must arise and be breached on the defendant's property. 311 Kan. at 731. The petitioner in that case, Hammond, was a patron at the VFW when he got into an argument with a third party (Blackwood) in the bathroom. Hammond also argued with other patrons and was eventually kicked out and banned from the VFW by the bar manager (Nease). With several patrons gathered around, Nease announced that Hammond was banned and pushed Hammond out the door. Blackwood and other patrons followed him and escorted Hammond outside. Once outside, Blackwood head-butted Hammond as he was standing on the sidewalk. The other patrons also kicked Hammond in the middle of the street, by Hammond's vehicle. 311 Kan. at 725.

The district court granted summary judgment for the VFW. But this court reversed the decision, finding the district court ended its analysis of the existence of a duty and potential breach of duty too quickly:

16

"'While the tortious conduct is *consummated* when the foreseeable conduct results in actual harm to the plaintiff, in the circumstances of our present case negligence can arise—based on the existence of a duty and the breach of that duty—*while all the parties were still on the VFW's premises*. It was there that Nease arguably could have foreseen the consequences of allowing Blackwood and his friends to join him in escorting Hammond from the premises. Under this scenario, if established at trial, any breach of Nease's duty would have occurred before Nease stepped over the threshold of the tavern door.' (Emphases added.) *Hammond*, 2018 WL 4655891, at *8." 311 Kan. at 730.

VFW petitioned for review, arguing this court's decision improperly extended the duty of care owed by business owners to their customers. Our Supreme Court rejected the argument based on the same reasoning given by this court. 311 Kan. at 730. *Hammond* found that Nease could reasonably foresee the patrons might injure Hammond because Nease was aware of, and arguably facilitated, the potential violence. The harm was also foreseeable because Nease had actual knowledge of the conflict between Hammond and Blackwood while inside the VFW and watched Blackwood and other patrons take Hammond outside. Nease also knew about a prior incident involving Blackwood that revealed Blackwood had violent propensities. Thus, the manager arguably could have foreseen the violent consequences to Hammond that immediately followed. Appellants are thus correct that a prima facie case of negligence may be made even when an injury does not occur on the defendant's property. See *Hammond*, 311 Kan. at 730-31.

Similar cases base a proprietor's duty to protect a patron on the proprietor's prior knowledge. In *Kimple v. Foster*, 205 Kan. 415, 469 P.2d 281 (1970), the plaintiff, a guest at defendant's bar, was attacked in the bar by a group of other patrons. The court found that the defendant had reason to know that his guests were in danger because the group had been unruly for four hours before the attack. Those facts should reasonably have placed defendant on notice that trouble might be expected which would endanger the safety of the patrons. 205 Kan. at 418. Because he had been put on notice of the possible danger to other patrons, the defendant had an affirmative duty to take reasonable

17

measures to protect them. 205 Kan. at 418-19. See also *Gould v. Taco Bell*, 239 Kan. 564, 569, 722 P.2d 511 (1986) (restaurant clerks who knew plaintiff's assailants had started a fight there two weeks before, that the late-night patrons had been destructive and uncontrollable this night, and then saw the patron strike another, had a duty to protect plaintiff from attack in store and parking lot).

But here, no one associated with Kansas Village witnessed the event or knew about the actors' propensity for violence before Kuebler was killed. No evidence shows that Nolte had previously committed violent or reckless acts, or that Kansas Village knew of them. Nolte had never been a tenant there. Appellants do not show any previous interactions between Alston, Douglas, and Nolte, or any of them, that should have put Kansas Village on notice of any potential violence from any of them.

Appellants show no similar duty or breach of duty on Kansas Village's property. Although Alston and Douglas had a fight in Kansas Village's parking lot, which escalated from texting to a possible assault with a knife then to using a car as a deadly weapon before Kuebler was killed in the alley, Appellants do not allege that anyone associated with Kansas Village was present and thus could have foreseen the violent consequences to Kuebler from watching the acts in the parking lot.

Nor do Appellants show that the events on April 3, 2018, created a loud enough or long enough disturbance that Kansas Village should have known about pending danger to its tenants. Although Alston and Douglas apparently argued the entire day after breaking up in the morning, they did so via text messages, unknowable to Kansas Village. And when Alston and Douglas returned to the parking lot in the evening before Nolte hit Kuebler, they argued for a time inside the vehicle. The facts fail to show how long Alston and Douglas argued in the parking lot, how long their argument was confined to their vehicle, how loud their argument was, how many people heard it, whether a crowd

18

gathered, or other details that could suggest that violence was likely to follow and could spill from the parking lot into the alley.

Appellants contend that the fight between Alston and Douglas "last[ed] several minutes" before Douglas, then Nolte, tried to run over Alston. Appellants do not allege that anyone from Kansas Village saw or heard the dispute or was notified of it until it was over. Unlike in *Hammond*, the facts fail to raise a material question of fact that Kansas Village knew of or somehow facilitated the danger posed by Nolte's actions. Nor do the facts, viewed in the light most favorable to Appellants, support any knowledge-based rationale like that in *Hammond* for finding reasonable foreseeability of potential harm to Kuebler.

### 3. *The crime density map is insufficient.*

Appellants' Exhibit 9 is a map of the city of Topeka with concentric circles of various colors allegedly showing crime density. Appellants contend that because Kansas Village operates an apartment complex in a high crime area, it should foresee that its tenants will suffer from violent crime and take security measures to prevent that.

But this argument paints with too broad a brush. In negligence cases, foreseeability is determined according to "a common-sense perception of the risks involved in certain situations and includes whatever is likely enough to happen that a reasonably prudent person would take into account." *McCarter*, 280 Kan. 85, Syl. ¶ 6. True, a court must consider the totality of the circumstances. But the circumstances considered in regard to foreseeability must "have a direct relationship to the harm incurred." (Emphasis added.) *Seibert*, 253 Kan. at 549. Appellants fail to show that operating an apartment building in a high crime area meets that restriction.

19

We focus on Kuebler's apartment building and not other buildings that may be included elsewhere in the Kansas Village complex. Appellants' crime density map (Exhibit 9) fails to pinpoint the location of Kuebler's apartment building; it may thus not be in the area of highest crime shown on the map. Kansas Village asserts the map lacks foundation and is based on hearsay, and it may well be. But even assuming that the map is admissible, and that it shows Kuebler's apartment building is in a high crime area, we find the map fails to show foreseeability of a violent crime. The map purports to show frequency of crime yet it does not differentiate between types of crime. Shoplifting and petty crimes apparently populate the map with equal weight or color as do violent crimes. Frequency of crime in an area does not show severity of crime in that area. The map also fails to show comparability or a "direct relationship" of the generic mapped crimes to the harm Kuebler suffered, as is necessary to show foreseeability. *Seibert*, 253 Kan. at 549. The crime density map thus fails to create a genuine issue of material fact precluding summary judgment.

*Blalock v. SRKBS Hotel, LLC*, 726 F. Supp. 3d 1266 (D. Kan. 2024), makes this point. There, the plaintiff was sleeping in her motel bed when a stray bullet from a gang shooting in the motel's parking lot came through the exterior wall, injuring her feet. The court found that the employees suspected crimes of prostitution, drug use, drug sales, and the presence of gang members on the property. But Blalock did not contend the shooters were on the property to use or sell drugs or to buy sex. Nor did plaintiff assert that the shooters had done so at that motel in the past. The shooters came to attend a party which later devolved into violence after the night auditor peaceably shooed the partygoers outside. The suspected crimes of prostitution and drug use/sales thus did not bear a "direct relationship to the harm incurred." See *Seibert*, 253 Kan. at 549.

The *Blalock* court specifically analyzed general crime density maps and related testimony. It first found the location-specific crime density maps and the testimony of a detective could convince a reasonable juror that the motel sat in a high crime area,

20

suggesting a triable issue of foreseeability and requiring the court to deny summary judgment to defendants. But after conducting a "more granular analysis required by Kansas law," the court concluded differently. 726 F. Supp. 3d at 1286.

> "The crime density maps don't differentiate among the types of crime. And neither did Detective Snyder. This imprecision matters. The Kansas Supreme Court requires this court to consider only those circumstances that 'have a direct relationship to the harm incurred[.]' *Seibert*, 856 P.2d at 1339. The crimes that pigment these density maps don't portray a direct relationship to shootings, or, for that matter, any type of violent assault. This Order already has noted the precision demanded by Kansas's foreseeability test. Recall the table above where the court summarized the type of crime occurring at the Super 8 Motel: primarily larceny, coupled with some drug use crimes and burglary (see § III.A.2.a.i. above). Simply put, these maps don't answer the right question—at least not according to the Kansas Supreme Court's reasoning in *Seibert*." 726 F. Supp. 3d at 1286.

The court then held that evidence must address both frequency and severity of crimes to create a fact issue as to whether a premises owner has a duty to protect:

> "'It is only where the frequency *and severity* of criminal conduct substantially exceed the norm or where the totality of the circumstances indicates the risk is foreseeably high that a duty should be placed upon the owner of the premises to provide security.' (emphasis added). To be sure, the maps here, and Detective Snyder's testimony, suggest crime *frequency*. But frequency under *Seibert* isn't enough. A high crime area must include more frequent *and more severe* levels of criminal conduct such that those levels substantially exceed the norm. The evidence plaintiff has adduced—the crime density maps and Detective Snyder's testimony—indicates frequent crime, but not severe crime. No reasonable factfinder could examine maps showing a high level of crime—but without evidence of shootings or other violent crime—and find that defendants here should have foreseen the gang shooting that injured plaintiff. And so, the high crime area prong doesn't present a genuine issue warranting a trial on foreseeability, after all. [Citation omitted.]" 726 F. Supp. 3d at 1287.

Similarly, the Topeka crime density map does not raise a triable issue of foreseeability. Evidence that Kuebler's apartment may have been in a high crime area is insufficient.

4.  *The incident reports lack a direct relationship to the harm incurred.*

To show the severity of crime, Appellants rely on incident reports which allegedly show violent criminal activity at the apartment building, alerting Kansas Village that additional security was reasonably necessary. Although Kansas Village estimates that Appellants submitted around 2,600 documents to the district court, few of those are included in the record on appeal. We thus restrict our review to the 15 summary judgment exhibits in the appellate record showing incidents reported to police from Kuebler's apartment building between February 2016 and April 3, 2018, the date Kuebler was killed.

Kuebler made the most recent of these calls to police, reporting a man banging on her windows and yelling at her to let him in. The remaining reports include:

- seven domestic disputes or fights between residents;
- the murder of two male residents by a nonresident;
- a shooting involving three victims, where a truck was seen speeding though the alleyway behind the apartment building;
- two physical attacks of female victims;
- a kidnapping of four people;
- a person speeding and driving on a sidewalk, nearly hitting a resident;
- shots fired from a BB or airsoft gun at passing cars; and
- an attempt by a woman to get into a resident's apartment by yelling and banging on the resident's windows.

Kansas Village correctly notes that these are merely reports of incidents, some of which may or may not be crimes, thus they fail to prove any criminal activity at Kuebler's apartment building. None of the incident reports relate to conduct by Nolte, Alston, or Douglas.

Although some are reports of domestic disputes, Appellants fail to show that the reports would put Kansas Village on notice that a tenant involved in a domestic dispute would try to hit another with a vehicle, then solicit a friend to do the same, as here. The circumstances noted in the incident reports lack a direct relationship to the harm incurred by Kuebler. The evidence does not either show a pattern of criminal conduct or any one-time event that could reasonably indicate a risk of harm like the harm that caused Kuebler's death.

This court has similarly discounted a long list of incidents reported to police from an apartment complex in the years before the violent death of a plaintiff's son in *Estate of Debrylan Bell v. 617 West LLC*, No. 124,418, 2022 WL 17881331 (Kan. App. 2022) (unpublished opinion). The panel in *Bell* affirmed summary judgment, finding as a matter of law that the risk of harm by a third party's crime was unforeseeable under the totality of the circumstances. 2022 WL 17881331, at *1.

Bell, the plaintiff's son, was killed by a gang member in the parking lot of an apartment complex. Neither Bell nor his killers lived at the complex, but Bell had stayed there at times during the few weeks before he was killed. Bell's mother claimed that the killing was caused by the complex's negligent failure to take additional steps to ensure the safety of people at the apartments. 2022 WL 17881331, at *1.

In affirming the district court's grant of summary judgment to the apartment complex, this court assessed two factors: (1) whether the landowner knew of the attack beforehand; and (2) whether the history of violent crimes around the property directly

related to the fatal shooting. 2022 WL 17881331, at *4-6. The panel answered no to both questions:

> "Bell's killing was not foreseeable to the apartment complex. Neither Bell nor any of his killers lived there. There had been no prior incidents at the complex involving any of them. And rather than wait for Bell at [the apartment complex] to exploit a lack of a security guard on duty, inoperative cameras, or poor lighting, the killers searched for him around Wichita, and he just happened to be at [the apartment complex] when they found him. Bell's killing was not a crime of opportunity. Rather, the attack's targeted nature suggests that Bell's killers would have shot him anywhere they located him."
> 2022 WL 17881331, at *5.

The panel thus discounted "a long list of incidents reported to police from the apartment complex in the years before Bell's death," 2022 WL 17881331, at *5, because the history of violent crimes around the property did not directly relate to the fatal shooting. The panel upheld the district court's finding that "the complex owed Bell no duty to prevent his death because it was unforeseeable," 2022 WL 17881331, at *4, while admitting that instances when a court can determine foreseeability as a matter of law are "rare." 2022 WL 17881331, at *1.

The four circumstances that Appellants argue—the fight in the parking lot, the attorney's hearsay declaration, the crime density map, and the incident reports—thus fail to raise a genuine issue of material fact as to foreseeability of harm. It has thus shown no duty on the part of Kansas Village to protect Kuebler.

B. *Other cases applying the totality of circumstances test have granted summary judgment based on lack of foreseeability.*

Appellants contend that this case is distinguishable from others which have affirmed summary judgments based on lack of foreseeability, citing *McCarter* and *Gragg*

24

*v. Wichita State Univ.*, 261 Kan. 1037, 934 P.2d 121 (1997). We disagree. In both cases, our Supreme Court found a lack of foreseeability in part because no evidence showed prior instances of similar harmful conduct. See *McCarter*, 280 Kan. at 106 (finding no evidence of previous fights involving child accused of injuring the plaintiff, another child that lived in the same mobile home park as the accused); *Gragg*, 261 Kan. at 1056 (finding no foreseeability when one attendee shot and killed another at a fireworks show on campus when only one similar incident occurred two years earlier and no shootings occurred at the previous 17 shows, despite known gang activity within one half mile of the event).

We find other cases that have affirmed summary judgments for lack of foreseeability as well. In *Gardin v. Emporia Hotels, Inc.*, 31 Kan. App. 2d 168, 61 P.3d 732 (2003), a man in a hotel parking lot (not a hotel guest) was repeatedly stabbed by a hotel guest (part of a sales group that had stayed there before). The victim ran to enter the glass lobby doors but found them locked, and the nearby hotel employee refused to unlock the doors for him. This court analyzed the totality of the circumstances to determine whether the hotel had a duty to protect the plaintiff from this "unforeseeable attack." 31 Kan. App. 2d at 176. Those circumstances included:

- the employee had no warning that the attacker was violent;
- the hotel had no knowledge that other members of the sales group had engaged in prior criminal activity;
- the record of prior crime at the hotel showed one theft from the cash register;
- the hotel's location was not in a high-crime neighborhood despite its location near an interstate highway; and
- different lighting in the parking lot would not have prevented the attack.

25

The court found it unforeseeable that the attacker would follow the victim into the lighted area and stab him repeatedly in front of a hotel employee. It thus affirmed the district court's grant of summary judgment. 31 Kan. App. 2d at 176.

Most recently, the federal court in *Blalock* applied *Seibert*'s rule that the circumstances considered in regard to foreseeability must have a direct relationship to the harm incurred. There, the plaintiff was sleeping in her motel bed when a stray bullet from a gang shooting in the motel's parking lot came through the exterior wall, injuring her feet. The court applied the totality of circumstances test and found:

- no evidence that owners knew beforehand that an altercation involving gunfire would occur, or that owners had encountered the shooters in any prior incident;
- no evidence that crimes previously reported at the motel had any direct relationship to the altercation in the parking lot;
- crime density maps and related testimony could not create a fact issue under Kansas law as to whether owners had a duty to protect a guest;
- owners had no general duty of care to protect a guest from injury inflicted by a bullet; and
- owners had no duty, as occupiers of land, to protect a guest from injury inflicted by a bullet.

It thus granted summary judgment to the motel based on lack of foreseeability, while recognizing that doing so under Kansas law is rare. 726 F. Supp. 3d at 1294.

C. *Facts show no reasonable foreseeability giving rise to duty.*

When we compare the facts in similar cases to the facts here, we reach the same conclusion—the harm was not reasonably foreseeable to Kansas Village as a matter of law. The record shows no prior similar incidents—injuring a tenant with a car. No

26

evidence shows that Nolte, Alston, or Douglas had committed any violent act before the underlying incident or that Kansas Village knew of such violence. The fight between Douglas and Alston in Kansas Village's parking lot before Kuebler was killed was unknown to Kansas Village. And the crime density map and the incident reports, even viewed together, fail to establish foreseeability giving rise to a duty. See *McCarter*, 280 Kan. 85, Syl. ¶ 5; *Seibert*, 253 Kan. at 549; see also *Gragg*, 261 Kan. at 1044-45 ("'An accident which is not reasonable to be foreseen by the exercise of reasonable care and prudence is not sufficient grounds for a negligence action.' [Citation omitted.]"). The only reasonable conclusion that can be drawn here is that Kuebler's killing was not reasonably foreseeable, as a matter of law.

We thus affirm the district court's grant of summary judgment to Kansas Village.

Affirmed.